## Adeline G. Nott's *case.*

The 6th and 7th sections of *ch.* 124 of the statutes, by which two or more of the overseers of the poor in any town, are empowered and directed to commit to the Work-house, by writing under their hands, " all persons able of body to work, and not having estate or means otherwise to maintain themselves, who refuse or neglect so to do ; live a dissolute, vagrant life, and exercise no ordinary calling or lawful business, sufficient to gain an honest livelihood," violate no provision of the *constitution.*

ADELINE G. NOTT was brought before the Court on a writ of *habeas corpus,* addressed to *Curtis Meserve,* master of the workhouse in *Portland.* By the return of the writ it appeared, that on the 2d day of *April,* 1834, two of the Overseers of the Poor of *Portland,* had set forth under their hands that it appeared to them, " that *Adeline G. Nott,* now resident in said *Portland,* is a person able of body to work, has not estate or means otherwise to maintain herself, and neglects and refuses so to do, lives a dissolute, vagrant life, and exercises no ordinary calling or lawful business sufficient to gain an honest livelihood, and in our opinion is liable to become chargeable to the city." The master of the work-house in *Portland* was therefore directed to receive her into said house, and there employ and govern her, according to the

rules and orders of the same, until she should be discharged by order of law. This was directed to either of the Constables of *Portland*.

The authority for the committal was derived from statute of 1821, *ch*. 124, *sec*. 6, 7, which says " that any two or more of the overseers in any town," " are hereby authorised, empowered, and directed to commit to such house [work-house] by writing under the hands of the said overseers, to be employed and governed, according to the rules and orders of the house," &c. "all persons able of body to work and not having estate or means otherwise to maintain themselves, who refuse or neglect so to do ; live a dissolute vagrant life, and exercise no ordinary calling or lawful business, sufficient to gain an honest livelihood."

*R. A. L. Codman,* of counsel for the said *Nott,* moved for her discharge, on the ground that the section of the statute under which the committal was made, was *unconstitutional* and *void.*

1. Because it is in derogation of the absolute and natural rights of every citizen of the State, in authorising the commitment to a dungeon or work-house, of a citizen without trial or hearing, and that too, by persons invested with no judicial power.

2. Because it violates the spirit and genius of the constitution and laws of the land. The constitution declares that " all men are born equally free and independent, and have certain natural inherent and unalienable rights, among which are those of defending life and liberty." But how can it be said that the citizen of this State can enjoy liberty, if at any time he may be committed by two others, to a dungeon, without a hearing, without a trial — without even a *complaint on oath,* and the imprisonment being, as by the law it may be, *for life.*

3. Because it is an infraction of the express terms and letter of the constitution. The 6th *sec.* of the 1st. *Art.* of the constitution provides, that "in all criminal prosecutions the accused shall have a right to be heard by himself and counsel, confronted by witnesses, to have compulsory process for obtaining witnesses in his favor. All these rights are clearly violated by the law in question.

But if the law were constitutional, still it was contended that, the imprisonment in this case was unlawful.

Because the warrant was not signed and issued by the order of the board of overseers at any regular or stated meeting thereof.

The statute speaks of " quarterly meetings" and " intermediate" ones — from which, and other parts of the statute, it is plainly inferrible, that their powers should be exercised in such mode.

*Longfellow*, City Solicitor, *e contra*.

WESTON J. delivered the opinion of the Court.

The overseers of the poor have no criminal jurisdiction. They had no right to act upon the complainant as an offender; or to punish her as such. Unless the course taken by them can be justified, as falling within their proper department, the complainant must be discharged. The maintenance and support of the poor, has been the subject of legislative provision, from the first settlement of the country. The objects of the public bounty, must necessarily be more or less subject to the public control. It is not unreasonable that they should be made to contribute to their own support, by some suitable employment. This cannot often be effected, without subjecting them to a degree of coercion and restraint, which would be an invasion of the rights of any citizen, competent to take care of himself. Idiots and insane persons cannot, from their imbecility, exercise the rights of citizens. Their persons and property, if they have any, must be confided to others.

The indigent have no claim to be supported in idleness; and it is but just that they should remunerate those, charged with their maintenance, by their own industry. Their poverty generally grows out of an unwillingness to labor, or is occasioned by reckless and improvident habits. Thus circumstanced, and while receiving alms from the town, they have no just right to complain, if they are sent to, employed and governed in a work-house, provided for the purpose of making their support less burthensome. It would probably not be contended that their rights would be thereby infringed; unless the restraint should be continued beyond the necessity which occasioned it.

The case of the complainant is not precisely of this character. The overseers have certified, in the writing under their hands, directed to either of the constables of *Portland,* that she is there

Adeline G. Nott's case.

resident, " that she is a person able of body to work, has not estate or means otherwise to maintain herself, and neglects and refuses so to do, lives a dissolute vagrant life, and exercises no ordinary calling or lawful business, sufficient to gain an honest livelihood, and in their opinion is liable to become chargeable to the city." Assuming for the present the truth of these facts, are her constitutional or legal rights invaded by the course pursued ? She has not actually claimed or received alms. Such a claim is however impending, and must be met by the town. Her health and strength constitutes a fund, of which they have a right reasonably to avail themselves, to contribute to her maintenance. She is prostrating both by dissolute habits. Unless her course can be arrested, she may become entirely unable to do any thing towards her own support. She is but one degree removed from persons actually chargeable ; and that because she is able for the present to obtain subsistence, by unlawful means. Can we believe that the people have, by constitutional barriers, deprived the legislature of power to make provision for such a case ? Certain parts of the constitution have been referred to by her counsel, intended for the protection of a party, charged in a criminal prosecution. We cannot regard her case as of that character. What has been done, is to preserve her health and strength, and to render it productive. For whose benefit ? For her own. That she may thence draw an honest livelihood. That she may be removed from temptation, and compelled to cultivate habits of industry, to be again restored to society, a useful member, as soon as may be. It is, under the circumstances, a measure calculated for her good, however unacceptable. When enlightened conscience shall do its office, and sober reason has its proper influence, she will regard the interposition as parental ; as calculated to save instead of punishing. We have thus considered her case as properly belonging to the department of the overseers of the poor, being a measure taken to enable the town, with less expense, to provide for her support, which is about to be thrown upon them. But collaterally and incidentally, it may be viewed as a police regulation, to preserve the community from contamination.

The victim of contagious sickness, to whom no fault can be imputed, may at the discretion of the selectmen, be taken from his own house, from the aid and solace of his family, and assigned to such place, and subjected to such care, as they may adjudge necessary. *Revised laws, ch.* 127. The public health is deemed paramount to every other consideration. There may be cases of so pressing a character, that they cannot await the forms of law, ordinarily provided for the protection of right, and the suppression of wrong. Might not a judge lawfully refuse a *habeas corpus*, for the enlargement of a man infected with the plague, and restrained in a separate house ? Might not disobedience to the writ, in such a case, be justified ? And yet the right to this writ is secured by law ; but it must receive a reasonable construction ; and not be extended to cases, which, in the nature of things, could not have been contemplated.

It is urged, if this course is held lawful, there is no remedy, if a citizen is ever so unjustly charged, by the overseers. We do not so understand the law. They act at their peril. If they cause a citizen to be arrested and restrained, upon an unwarranted assumption of facts, they are answerable in damages. This Court in term time, or any one of its members in vacation, will, upon *habeas corpus*, inquire into the facts, if they may be controverted, and discharge the party, if they are not satisfactorily established, or if there be no further occasion for his or her detention. The authority is given to any two or more of the overseers. It is insisted, that it should have been exercised at a regular meeting. If necessary, such might have been the fact ; we have no evidence that it was not so.

We sustain the power of the overseers, receiving the writing under their hands, as *prima facie* evidence of the facts therein stated. And upon that evidence, she is to be remanded. If there is any reason to doubt the facts, we will examine their truth ; and discharge the complainant, if her detention is not justified.