## GRAY v. CONSOLIDATED ICE MACHINE COMPANY.

1. While it is true that where the vendee of chattels seeks to rescind the contract of purchase, upon the ground that there has been a breach of the warranty upon the part of the vendor of the fitness of the thing sold for the purposes intended, he is bound to make restitution and offer to restore the vendor to his original status, yet where by the contract of sale it is expressly stipulated that, in the event the thing sold shall not, upon a fair test, answer the requirements of the warranty, the vendor shall receive back the chattel and repay to the purchaser the sum paid by him on the purchase-price, the doctrine of restitution before absolution does

not apply. But if the test has been so long delayed as that, in the ordinary use of the thing sold, its capacity for meeting such requirements has been so impaired as not to come up to the terms of the warranty, or if the claim of the right of rescission has been so long delayed as to raise in favor of the vendor a waiver on the part of the vendee of his right to return the thing sold, the latter would forfeit not only the right of rescission under the contract, but also his right to maintain an action for damages as for a breach of the warranty.

2. There was no error in striking the original pleas filed by the defendant, as substantive defenses; but, under the principles above announced, the equitable plea as amended presented issues which should have been submitted to the jury.

Argued October 21, — Decided November 27, 1897.

Foreclosure of mortgage.    Before Judge Littlejohn.    Sumter superior court.    May term, 1897.

The Consolidated Ice Machine Company brought its petition to foreclose a mortgage executed to it by Virginia H. Gray to secure the payment of her three promissory notes to the plaintiff, dated December 3, 1888, one for $1,000 due October 1, 1889, another for $735 due January 1, 1890, and another for $1,000 due October 1, 1890, each bearing interest at eight per cent. per annum from November 1, 1888; the petition alleging that the defendant had failed to pay the notes, except the first for $1,000. Plaintiff also brought suit on the second and third notes. Both cases by agreement were consolidated and tried together. The defendant pleaded the general issue; also, that the consideration for which the notes and mortgage were given had failed in this: The consideration of the notes was the purchase of a fourth-interest in machinery for the manufacture of ice to be used and sold in ordinary trade. The purchase-price was $4,735, and at the time of the purchase defendant paid plaintiff $2,000 in cash, and gave her three promissory notes for the balance of the purchase-money. At the time of the purchase, plaintiff, by its duly constituted agent J. L. Bye, warranted that the machinery would produce 15 tons of good merchantable ice per day, and agreed that in the event it failed to produce that amount daily, plaintiff would take back the interest so bought, refund the money paid, and cancel the notes. It was further agreed, as a part of the contract of purchase, that the notes were not to be collectable until

after a fair test had been made of the machinery, and not then if the test did not show that the plaintiff had made good its warranty.    The test was to be made by an expert machinist to be employed by plaintiff, and was to show the capacity to be 15 tons of good merchantable ice daily.    Defendant knew nothing of the nature and capacity of the ice machinery, and relied wholly upon the good faith of the plaintiff, and upon its aforesaid representations and promises.    Relying upon said representations and contract she paid $3,000 before any actual test had been made as agreed on.    The test was made, and showed that the capacity of the machinery was only 12 tons, and not 15.    This test was fairly made, and under very favorable conditions, and extended over a period of several weeks, and was made by an expert machinist employed and furnished by the plaintiff.    By reason of the failure of the machinery to have a capacity of 15 tons, the consideration has failed to at least the extent of one half the value of the machinery.    Less than 15 tons daily would not make the business desirable and profitable, and did not suit her plans nor meet the demands of the trade, and the machinery was totally unsuited to the use intended.    Further, the consideration has wholly failed, and she is entitled to recover the sum of $3,000 and interest, paid by her to the plaintiff, and prays judgment accordingly.    By reason of the failure of consideration, and of the failure of the plaintiff to keep and observe its contract and all its obligations as aforesaid, defendant has been injured and damaged in the sum of $5,000, which she prays she may be allowed to recoup. Prior to this suit defendant tendered to the plaintiff the property, and demanded the return of her money ; and the same was refused.

The plaintiff demurred generally to the pleas, except that of the general issue.    The judge announced that he would sustain the demurrer.    Defendant thereupon offered, in connection with the pleas already filed, an amendment, to which plaintiff demurred generally.    The court sustained the demurrer and struck the pleas, except that of the general issue.    The amendment was, in substance, as follows : At the time of making the contract between the plaintiff and the defendant, a copy of

which is attached, it was contracted that the defendant should
have the benefit of all the terms, stipulations, conditions and
guarantees made by the plaintiff in its contract with Bell &
Sims, or with S. R. Sims, under which the original sale of the
machinery was made by the plaintiff, a copy of which is hereto
attached.   The special guarantees set out in said contract were
relied on by the defendant, and they were represented by plain-
tiff to enure to the benefit of defendant as purchaser, the same
as to the original purchaser, said Sims or Bell & Sims; said
warranties and conditions [including] that as to the capacity
of the engine and pumps being 15 tons per day, and also the
five paragraphs numbered 1st to 5th inclusive, and embraced
under the heading "the party of the first part guarantees," and
also all other covenants, conditions, terms, and stipulations
contained in the contract.   Said terms, conditions and guaran-
tees were intended by both parties to be a part of the contract
between plaintiff and defendant, and to be inserted in whatever
written evidence of the contract might be entered into.   The
plaintiff delivered to the defendant a certain bill of sale, which
briefly refers to said original contract and its place of record;
and defendant, being in ignorance of the technical effect of said
reference to the former contract, supposed that the reference
was sufficient to embody the original contract with Bell & Sims,
or Sims, in the contract with defendant.   Defendant is now ad-
vised that it is doubtful whether the reference in said contract
to the Bell & Sims contract was legally sufficient to embody
the provisions thereof in the contract with defendant, so as
to give defendant the benefit of all the warranties and condi-
tions contained in the Bell & Sims contract.   If the legal effect
of the contract made by the plaintiff with the defendant is not
to embody therein the conditions and warranties of the Bell &
Sims contract, it is due to a mutual mistake of law by both par-
ties to the contract in supposing that the legal effect of said refer-
ence to the Bell & Sims contract was to embody the same [in
the] contract with the defendant, or to a mistake of both par-
ties in omitting from the contract a repetition of the terms, con-
ditions and warranties in the Bell & Sims contract.   The con-
tract as signed (unless its construction is as contended by de-

fendant) is therefore not the true contract between the parties, and in justice and equity defendant is entitled to have said contract reformed and made to speak the truth of the contract between plaintiff and defendant. Wherefore defendant, by way of cross-petition against plaintiff, waiving discovery, prays that the contract be reformed so as to include the covenants, conditions and warranties contained in the Bell & Sims contract, and that the defendant have such other and further relief as may be meet and proper; and further, that defendant have judgment against plaintiff for damages for breach of said covenants and warranties, as set out in defendant's former pleas. Subsequently to the date of the contract whereby defendant obtained title to her interest in the ice plant (the bill of sale dated November 30, 1888, which should have contained the conditions and warranties of the contract of January 26, 1886, between plaintiff and Bell & Sims), plaintiff not only reiterated the original warranties and conditions in favor of Bell & Sims, but also, for a valuable consideration, expressly guaranteed that the engine and boiler were of the capacity of 17 tons per day, thereby guaranteeing two more tons capacity than the original guarantee, this guarantee being solely on the condition that a fair and full test should be made by an expert ice-machine operator to be furnished by the plaintiff. Accordingly the plaintiff sent its expert to make the test, and after a fair and full test the expert admitted that the ice plant, and especially the engine and boiler thereof, were not of the capacity guaranteed, but were of less capacity even than the original guarantee made to Bell & Sims. Said guarantee was in writing and properly signed by plaintiff by its duly authorized officer. Defendant is not able to attach a copy of said new guarantee, because it is lost, but defendant has stated the material parts of the guarantee. The original contract with Bell & Sims guaranteed the engine and pumps to be of 15 tons capacity, and the other parts of the machinery to be of 10 tons capacity. At the time of making the original guarantee, the ice-making machine in said Sims's ice-factory was to be 10 tons capacity, that being sufficient for the demand in the city of Americus at the time, but in view of the fact that the demand was expected to in-

crease, the pump and engine were intended and guaranteed to be of 15 tons capacity. It was contemplated by both parties that when the demand sufficiently increased, the owners of the plant would add an additional freezing-tank. Accordingly a six-ton freezing-tank was added to the plant; and prior to the addition of the six-ton tank it was manifestly impossible for the engine and boiler to be tested to any greater freezing capacity than that of the ten-ton freezing-tank. After the full and fair test made by the expert sent by plaintiff, and the demonstration beyond doubt that the engine and boiler were of less capacity than guaranteed by the plaintiff, defendant tendered her interest in the ice plant back to the plaintiff, who refused to take the same; and subsequently defendant again demanded of the plaintiff that she be relieved from the contract, and be reimbursed for the money, as the plaintiff had solemnly obligated to do; all of which plaintiff refused to do, and which was in flagrant violation of the contract.

The contract first referred to was as follows: "Georgia, Sumter County. This contract between the Consolidated Ice Machine Company, a corporation of Chicago, Ill., and S. R. Sims, Bascom Myrick, and Virginia H. Gray, of the County of Sumter, State of Georgia, witnesseth, that the said Consolidated Ice Machine Company, on the 27th day of July, 1886, did conditionally sell to said Sims certain machinery and implements for the manufacture of ice, together with all buildings containing said machinery and all appurtenances thereto, said conveyance being in writing and recorded in Book F, pages 183 to 187, of the records of mortgages in the clerk's office of superior court of said county, wherein said property is specifically described, as also the terms of sale. And whereas said Sims has failed to pay for said property according to said contract, and now comes and surrenders back to said company the possession, and all claims he might have had to one half-interest in said property, to be disposed of at will by said company, in consideration of which the said company releases the said Sims from a part of his indebtedness, to wit the sum of five thousand four hundred and twenty-nine dollars and fifty-eight cents; and in consideration that Virginia H. Gray has executed

and delivered to the said Consolidated Ice Machine Company her three promissory notes, one for one thousand dollars due 1st of October, 1889, one for seven hundred and thirty-five dollars due 1st of January, 1890, secured by a mortgage on real estate, the said company bargains and sells to said Virginia H. Gray, her heirs and assigns, one fourth-interest in said property, to wit one half of the whole interest surrendered back to said company by said Sims. And in consideration that said Bascom Myrick has turned over and transferred to said company one promissory note of Amos Clark for the sum of two thousand six hundred and ninety-four dollars and fifty-eight cents, due one day after date, secured by transfer of thirty-five shares of Brunswick Compress Company stock, the said Consolidated Ice Machine Company sells absolutely to said Bascom Myrick one fourth-interest in said property, to wit one half of the half-interest surrendered back by the said S. R. Sims. Given under my hand and seal this 30th day of November, 1888. [Signed] The Consolidated Ice Machine Company, per J. W. Shinkle, pres't. Eugene T. Shinkle, ass't sect." (Seal.) "Georgia, Sumter County. I, S. R. Sims, the party named in the foregoing, ratify and agree to the terms of same, and hereby surrender back to said company the one half-interest as aforesaid, and consent to their disposal of same as above. Witness my hand and seal, Nov., 1888. [Signed] S. R. Sims."

The other contract referred to was dated January 28, 1886, and was between the Consolidated Ice Machine Company and Bell & Sims. By its terms the first-named party was to furnish to the party of the second part a 15-ton ice-making machine, etc., for a sum stated; and it guaranteed as follows: "First, that only first-class materials and workmanship shall be employed in the construction of the machinery and apparatus, and that they will replace at their own expense any parts which may be found defective either in material or workmanship. Second, that the machine shall produce at least 20,000 lbs. of clear, solid, merchantable ice each twenty-four hours of operation. Third, that the machine will operate regularly and satisfactorily with proper care and attention. Fourth, that the maximum amount of fuel necessary to operate

this machine each twenty-four hours shall not exceed three tons of first-class steam coal, with proper firing, and that the water necessary to operate this machine shall not exceed 45 gallons per minute at 75 degrees Fahr.   Fifth, in event of the machine not fulfilling all that heretofore is guaranteed for it, the party of the first part agrees to remove the same at no expense to the party of the second part, and to refund to the party of the second part any and all moneys that they may have received on account of the same."

*Cutts & Lawson, Allen Fort* and *J. F. Watson*, for plaintiff in error.   *Guerry & Son* and *E. L. Guerry*, contra.

SIMMONS, C. J.   1. The pleas stricken by the court will be found in the official report.   Considering the original and amended pleas together, we think the court erred in striking them.   While the original pleas did not of themselves make a good defense, yet taking them with the amended pleas, particularly the last, we think the allegations were sufficient to authorize the submission of the facts set out to the jury.   As a general rule, where the purchaser of property seeks to rescind the contract of purchase on the ground of a breach of warranty on the part of the seller, such purchaser must offer to restore the seller to his original status.   Where, however, the contract of sale expressly stipulates that in the event the thing sold shall not, upon fair test, answer the requirements of the warranty, the seller shall receive back the property and repay to the purchaser the sum received on the purchase-price, it is not necessary to tender or offer to restore to the purchaser the property so purchased.   If the contract provides for a test of the thing purchased, in order to ascertain whether it is suitable for the purposes for which it was purchased, and the test provided for in the contract is delayed so long that, in the ordinary use of the thing sold, its capacity to produce the result warranted has been so impaired as not to meet the warranty, or if the claim of the right of rescission has been so long delayed as to raise in favor of the seller a waiver of the purchaser's right to return the thing sold, the purchaser would forfeit not only the right of rescission under the contract, but also his right to maintain an action for damages for the breach of the warranty.

2. As above remarked, while the original pleas did not set up a good defense, we think the equitable pleas filed as amendments thereto did contain allegations sufficient to require them to be submitted to the jury. The amendments set up a new, warranty subsequent to that set out in the original pleas, and state that the seller of the ice machine received a valuable consideration for this subsequent warranty. It was contended here by counsel for defendant in error that the valuable consideration expressed in this amended plea was the same as that given in the original transaction. After a careful reading of the amended pleas, we think that this is not true. The plea alleges the subsequent contract, and that there was a valuable consideration therefor; and this consideration, we think, relates to the subsequent contract. At any rate, the plea was good against a general demurrer. If the plaintiff in the court below had desired a more specific allegation as to what consideration was paid, or as to whether the allegation referred to the original consideration or to a new one, a special demurrer would have forced the defendant to set it out more specifically by stating whether the reference was to the original consideration, or to a new consideration paid for the new warranty. We think, therefore, that the trial judge erred in striking the amended pleas, and that he should have submitted them to the jury.

*Judgment reversed. All the Justices concurring.*