ST. LOUIS & S. F. R. CO. v. STATE *et al.*

No. 1070.　Opinion Filed March 8, 1910.

(107 Pac. 929.)

1.　COMMERCE—Interstate Commerce — Interference — Orders of Corporation Commission. That part of Order No. 167, Rule 10 of the State Corporation Commission, which provides that ten days' free storage shall be allowed on less than car load shipments, when destined to consignees who live at interior points five miles or more from the railroad station, in so far as it applies to interstate commerce, is void, for the reason that it is in conflict with and is superseded by sections 1 and 2 of an act entitled "An act to amend an act entitled 'An act to regulate commerce'" (Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]), and for the further reason that it interferes with and imposes upon interstate commerce an unreasonable burden.

2.　RAILROADS—Regulation—Contempt Proceedings Before Corporation Commission—Amendment to Affidavit. An amendment to an affidavit charging a railway company with having violated a certain order of the State Corporation Commission, so as to make the original affidavit charge the violation of an order other than that charged in the original affidavit, must be verified, and an order of the Corporation Commission directing that the original affidavit shall be amended and thereupon, over the objection of defendant, proceeds with the trial upon the theory that it has been amended, where such amendment was never made, verified, and filed, is reversible error.

(Syllabus by the Court.)

*Appeal from Corporation Commission.*

Action by the State and J. D. Durksen against the St. Louis & San Francisco Railroad Company. From an order of the State Corporation Commission fining defendant for contempt, defendant appeals. Reversed and remanded.

On the 17th day of April, 1909, appellee J. D. Durksen filed his affidavit with the State Corporation Commission, in which he charges appellant with having violated two certain orders of said Corporation Commission, and asked that it be summoned to appear and show cause why it should not be fined for contempt. He avers

in his affidavit that appellant in violation of Order No. 167, Rule 10 of the Corporation Commission, on April 7, 1909, at its Cordell station, demanded storage of appellee on less than a car load shipment, which, on April 1, 1909, had arrived at Cordell over appellant's railway, and which had been shipped to appellee as consignee; and that appellant, although appellee offered to pay the regular freight charges on the shipment, refused to deliver the same to him, unless he would pay, in addition to the regular freight charges, storage on the goods from 48 hours after their arrival until the date on which delivery was demanded. He complained, further, that appellant, in violation of Rule 4 of the same order, failed to promptly notify him of the arrival of said freight. By a second count in his petition, he charges appellant with having violated Order No. 168, Rule 3 of the Corporation Commission, in that on March 3, 1909, it refused to·accept from him, at its freighthouse or platform, freight for shipment in less than car load lots, and required him to load the same into a car almost inaccessibly located. During the trial on the petition, appellee was permitted, over objections of appellant, to amend his petition, so as to charge that appellee had refused, on March 20, 1909, in violation of Order No. 10, § 2, of the Corporation Commission, to receive from him at its depot or platform a box of trees for shipment. The commission found that appellant had violated order No. 167 by refusing on April 7, 1909, to deliver the freight without payment to it of storage charges thereon demanded by its agent, and that it had, on March 20, 1909, violated its Order No. 10, § 2, as charged in the amended petition. and thereupon made an order, fining appellant for contempt in the sum of $100 on each count. It is to reverse this order that this proceeding is prosecuted.

R. A. Kleinschmidt. for appellant.—On question of interference with interstate commerce: *Howard v. I. C. R. R.*, 207 U. S. 463.; *G., C. & S. F. R. Co. v. Hefley*, 158 U. S. 98; *Leisy v. Hardin*, 135 U. S. 100; *Rhodes v. Iowa*, 170 U. S. 412; *Kelley v. Rhoades*, 188 U. S. 1; *McNeil v. Southern R. Co.*, 202 U. S. 543; *C. & C.*

*Bridge Co. v. Kentucky,* 154 U. S. 204; *I. C. C. v. C., B. & Q. R. Co.,* 186 U. S. 320; *I. C. C. v. Detroil, etc., R. Co.,* 167 U. S. 633.

Geo. A. Henshaw, Asst. Atty. Gen., for appellees:—On same question: *Covington, etc., Bridge Co. v. Kentucky* (U. S.) 38 L. Ed. 966; *Lake shore, etc., R. R. Co. v. Ohio,* 173 U. S. 285; *W. U. Tel. Co. v. Tyler,* 90 Va. 297, 41 L. Ed. (U. S.) 1180; *W. U. Tel. Co. v. James,* 162 U. S. 650; *Cleveland, etc., R. Co. v. Illinois,* 177 U. S. 514; *Wisconsin, etc., R. R. Co. v. Jacobson,* 179 U. S. 287; *Norfolk & W. R. R. Co. v. Adams,* 90 Va. 393; *Crammelien v. Railroad Co.,* 90 N. Y. 77; *Nicallette Lbr. Co. v. Coal Co.,* 213 Pa. 379.

HAYES, J. (after stating the facts as above.)    Order No. 167, Rule 10 of the State Corporation Commission, with the violation of which appellant is charged and has been convicted by the Corporation Commission, reads as follows:

"(a) Storage will be charged on all less than car load freight held in or on railroad warehouses or platforms over 48 hours from the first 7 a. m. after notice of arrival, not including Sundays and legal holidays, at the rate of five (5) cents per ton for each 24 hours or fraction thereof.

"(b) Double these charges shall be assessed on freight of an explosive character.

"(c) The minimum charge for any one shipment shall be 10 cents.

"(d) Ten days' free time will be allowed on less than car load shipments when destined to consignees who live at interior points five miles or more from the railroad station.

"(e) Freight on cars placed on delivery track and subsequently unloaded in railroad warehouses or platforms is subject to demurrage rules while on delivery track, and storage rules thereafter."

The shipment of freight involved in this case was a consignment of fruit trees of less than car load lot, which originated in Shenandoah, Iowa, and was consigned to appellee at Cordell, in this state.    That such shipment involves interstate commerce is too evident to require citations of authorities.    Appellee resides more than five miles from the town of Cordell.    When he de-

manded delivery of the shipment to him, more than 48 hours had elapsed since the arrival of the shipment, and notice thereof had been mailed to appellee by appellant's agent, and appellant's agent at Cordell refused to deliver the shipment, without payment of storage charges for the excess time the freight had remained in the depot after the lapse of 48 hours after its arrival. Appellee refused to pay the storage charges, and appellant refused to deliver the freight. Counsel for the railway company attacks the order of the commission upon the ground that Order No. 167, Rule 10, is void. The alleged invalidity of said order is urged by counsel in his brief upon three grounds: First, that it is in violation of a certain act of the territorial Legislature extended in force in the state by the enabling act and the Constitution; second, that it is in violation of the act of Congress regulating interstate commerce, approved June 29, 1906, commonly known as the Hepburn act (Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]); third, that said order is a burden upon and interferes with interstate commerce in violation of the Constitution of the United States.

The first paragraph of section 18, art. 9, of the Constitution, confers upon the Corporation Commission power and authority, and charges it with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in the state in all matters relating to the performance of their public duties and their charges therefor. But the third paragraph of the section puts a limitation upon the power and authority granted in general terms by the first paragraph of the section in the following language:

"The authority of the commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges, and classifications of traffic for transportation and transmission companies, shall, subject to regulation by law, be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the Legislature to legislate thereon by general laws. * * * " (Bunn's Constitution of Oklahoma, p. 60.)

Vol. 26—5

This provision of the Constitution divides the subject-matters over which the Corporation Commission is given jurisdiction into two classes. The first class includes those matters over which its authority is paramount, to be exercised, however, under regulations prescribed by the Constitution or by law. The second class includes those matters over which its authority is inferior to the power of the Legislature to legislate thereon by general laws. It is contended by appellant that the promulgation by the commission of Order No. 167, Rule 10, was the exercise of an authority belonging to the second class; that such order is and can be effective only to the extent that it is not in conflict with any general act of the Legislature on the same subject-matter.

We think the contention that the making and promulgation of said order is by virtue of authority within the second class above described cannot be sustained. The matters over which the commission is given paramount authority are to prescribe all rates, charges, and classifications of transportation and transmission companies. Said Order No. 167, Rule 10, undertakes to fix the charges that transportation companies may make and collect for storage services rendered incidentally to the transportation and delivery of freight; and, in so far as it attempts to prescribe the charges that shall be made for such services, it clearly falls within the first class, and its actions thereon, when made in conformity to the regulations prescribed by law, are paramount. The territorial Legislature, on the 15th day of March, 1905, passed an act entitled "An act to regulate demurrage and storage charges, and to prevent delays in furnishing cars and in the transportation and delivery by rail- road freight other than live stock and perishable freight." Sess. Laws 1905, p. 143. Section 7 and 8 of said act, in so far as said Order No. 167, Rule 10 of the commission, is involved in this cause, covers the same subject-matter as said order. By section 7, the act prescribes what notice of the arrival of freight shall be given by a common carrier to the consignee, and the manner and time of the service of such notice. Section 8 provides that all pack-

age freight unloaded by railroad companies in their depots or warehouses and all freight which, in order to release cars, is unloaded in the yard space of a railroad company and not removed therefrom by the owner within 48 hours, computing from 7 o'clock a. m. of the day following legal notice of arrival, may be subject to the charge of storage for each day it remains in custody of the railroad company, and prescribes the rates of such storage charge. The validity of these provisions of that act, at the time of its enactment, although under the terms of the act they apply both to intrastate and interstate shipments, has not been questioned by either party; and assuming, without deciding, that said act was valid and in force in the territory of Oklahoma at the time of the admission of the state, and was extended in force by reason of section 2 of the Schedule to the Constitution and of section 21 of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 277), the same in all events became inoperative when the State Corporation Commission, in the exercise of the authority vested in it by the Constitution, promulgated rules and orders upon the subject of storage charges covering the subject-matter of said act which are in conflict with said act. Whatever may be the power of the Legislature to prescribe rules and regulations concerning the matters set forth in the first part of that portion of section 18, art. 9, quoted *supra*, in the absence of any action thereon by the Corporation Commission, when the Corporation Commission exercised its authority, its acts and orders, in so far as they are valid, superseded all rules and regulations by statute theretofore existing and covering the same subject-matter.

Section 35, art. 9, of the Constitution provides that after the second Monday in January, 1909, the Legislature may by law, from time to time, alter, amend, revise, or repeal sections from 18 to 34, inclusive, of said article, or any of them or any amendment thereof. By reason of this provision, it is within the power of the Legislature to enact, at any time after the second Monday in January, 1909, a law changing the powers of the Corporation Commission as defined by section 18, *supra;* and the authority

of said commission that, before the second Monday in January, 1909, was paramount to the authority of the Legislature to legislate upon any subject within the authority of the Legislature, is since that date subject to the superior authority of the Legislature to legislate upon any subject of which the commission is given jurisdiction; but section 35 can have no operation in this case, because the general law, to wit, the act of the territorial Legislature of March 15, 1905, was enacted and extended as a general law of the state (if it was extended) prior to the time the Legislature is authorized by said section 35 to alter, amend, or repeal those sections of the Constitution which confer upon the Corporation Commssion its powers, and define the character of such powers. At the time said act became a law of the state, the power of the commission over the subject-matter of the act was supreme.

Order No. 167, Rule 10, is made to apply both to intrastate and interstate shipments. This proceeding grows out of an effort of the commission to enforce the order as to an interstate shipment. The next inquiry therefore that arises under appellant's contentions is: Is said order incompatible with any act of the Congress of the United States upon the same subject-matter, enacted by virtue of the power delegated to Congress by section 8, art. 1, of the federal Constitution, to regulate commerce with foreign nations and among the several states and with the Indian tribes? In *Covington, etc., v. Kentucky,* 154 U. S. 204, 14 Sup. Ct. 1087, 38 L. Ed. 962, the court, discussing the power of the states over the subject of commerce, said:

"The adjudications of this court with respect to the power of the state over the general subject of commerce are divisible into three classes: First, those in which the power of the state is exclusive; second, those in which the state may act in the absence of legislation by Congress; third, those in which the action of Congress is exclusive and the state cannot interfere at all."

The grant to Congress of the power to regulate interstate commerce does not, in the absence of congressional legislation upon the subject, imply a prohibition on the states to exercise the

same power in enacting local laws designed to secure the the performance by an interstate carrier of the duties imposed upon it by the common law and to secure the safety and comfort of passengers. *Cooley v. Board of Wardens of Port of Philadelphia,* 12 How. 299, 13 L. Ed. 966. The cases in which it has been held that a state may, in the absence of congressional inhibition, enact laws and regulations on matters local in their nature which tend to enforce the proper performance by interstate carriers of duties arising in the state, and which do not impede, but aid and facilitate, intercourse and traffic, although such laws or regulations may incidentally affect interstate commerce, are numerous, and the doctrine is too well settled to admit of doubt. *Smith v. Alabama,* 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508; *Nashville, etc., Ry. Co. v. Alabama,* 128 U. S. 96, 9 Sup. Ct. 28, 32 L. Ed. 352; *Western Union Tel. Co. v. James,* 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105; *Hennington v. Georgia,* 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166; *Railway Co. v. Fuller,* 17 Wall. 560, 21 L. Ed. 710; *New York, N. H., etc., Ry. Co. v. New York,* 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853; *Chicago Milwaukee R. R. Co. v. Solan,* 169 U. S. 133, 18 Sup. Ct. 289, 42 L. Ed. 688; *Richmond & Alleghany R. R. Co. v. Patterson Tob. Co.,* 169 U. S. 311, 18 Sup. Ct. 335, 42 L. Ed. 759; *Lake Shore, etc., R. R. Co. v. Ohio,* 173 U. S. 285, 19 Sup Ct. 465, 43 L. Ed. 702; *Asbell v. State of Kansas,* 209 U. S. 251, 28 Sup. Ct. 485, 52 L. Ed. 778; *Mo. & Pac. R. R. Co. v. Larabee Flour Mills Co.,* 211 U. S. 612, 29 Sup. Ct. 214, 53 L. Ed. 352. But when any such laws passed by the state in the exercise of its police power come in conflict with an act of Congress upon the same subject-matter, or the power granted to Congress over any such matter has been exercised by that body by the enactment of legislation upon the precise subject-matter covered by the act of the state Legislature, the law of the state must yield, and is superseded by the federal act. *Gulf, Colo. & Santa Fe Ry. Co. v. Hefley,* 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910.

In the case last cited, the statute of Texas made it unlawful

for any railroad company in that state to charge and collect, or to endeavor to charge and collect from any consignee a greater sum for transporting freight than was specified in the bill of lading. One of defendant's agents refused to deliver to plaintiff a consignment of furniture, unless plaintiff paid the freight charges in accordance with the rates named in the printed tariff sheet posted in the office of the company, as required by the act of Congress known as the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379), as amended by Act March 2, 1889, c. 382, 25 Stat. 855 (U. S. Comp. St. 1901, p. 3154), then in force, which amount was in excess of the charges specified in the bill of lading. Speaking of the result that must follow a conflict between the national act relating to interstate commerce and the act of the state relative thereto, the court said:

"Clearly the state and the national acts relate to the same subject-matter and prescribe different rules. By the state act the bill of lading is made controlling as to the rate collectable, and a failure to comply with the requirement exposes the delinquent carrier to its penalties, while the national statute ignores the bill of lading and makes the public tariff rate binding, and subjects the offender, both carrier and agent, to severe penalties. The carrier cannot obey one statute without sometimes exposing itself to the penalties prescribed by the other. * * * It is no answer to say that in this case the defendant might have complied with both the state and the national statute. * * * The question is not whether, in any particular case, operation may be given to both statutes, but whether their enforcement may expose a party to a conflict of duties. It is enough that the two statutes operating upon the same subject-matter prescribe different rules. In such case one must yield, and that one is the state law."

Section 1 of the Hepburn act (34 Stat. 584) defines the word "railroad" as follows:

"The term *railroad* as used in this act shall include all bridges and ferries used or operated in connection with any railroad; * * * and shall also include all switches, spurs, track and terminal facilities of every kind used or necessary in the transportation of a person or property designated herein and also all *freight depots*, yards, and ground used or necessary in the transportation or delivery of any of said property. * * * *"

The term "transportation" is defined by the same section to "include cars and other vehicles and all instrumentalities and facilities of shipment or carriage irrespective of ownership, or of any contract, expressed or implied, for use thereof and of service in connection with the *receipt, delivery*, elevation and transfer in transit, ventilation, refrigeration or icing, *storage* and handling of property transported. * * * " (Italics are ours.) It is provided by the same section that it shall be the duty of every carrier subject to the provisions of this act to provide and furnish "transportation upon reasonable request therefor, and at just and reasonable rates."

Section 2 of the act requires every common carrier subject to the provisions of the act to file with the Interstate Commerce Commission and print and keep open to public inspection schedules allowing all rates, fares, and charges of transportation between different points on its own route and points on the route of any other carrier, and provides "that the schedule printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried, and shall contain the classification of freight in force, and shall also state separately all terminal *charges, storage charges*, icing charges and all other charges which the commission may require, all privileges or facilities granted or allowed and any rule or regulation which in any way might change, affect or determine any part or the aggregate of such aforesaid rates, fares and charges or the value of the services rendered to the passenger, shipper or consignee." All changes in the rates, fares, and charges filed and published by the common carrier as required by the act, except those made after 30 days' notice to the commission and to the public, are prohibited, and the same section prohibits any carrier, except as otherwise provided by the act, to engage or participate in the transportation of passengers or property *as defined in the act*, unless the rates, fares, and charges upon which the same are transported by the carrier have been filed and published as required by the act; and a carrier is further prohibited from extending to any shipper or person any

privilege or facility in the transportation of passengers or property, except such as are specified in the tariffs filed and published by it. It must be borne in mind that "transportation," as defined by the act, includes storage and all services rendered by the carrier in connection with the delivery of property transported. A violation of the act is made a misdemeanor, and subjects the offending corporation to a fine of not less than $1,000 nor more than $20,000 for each offense.

Section 4 authorizes and empowers the Interstate Commerce Commission to hear complaints made against any carrier charging it with violation of any of the provisions of the act, and to determine whether any regulation or practice whatsoever of such carrier affecting the rights of complainant is unjust or unreasonable, unjust or unduly preferential, prejudicial or *otherwise in violation of any of the provisions of the act,* and determine and prescribe what will be the just and reasonable rate or rates, charge or charges, to thereafter be made, and to prescribe what regulation or practice in respect to such transportation is just, fair, and reasonable to be followed thereafter. Rebating and giving advantages and preferences to shippers is prohibited.

A complaint against a carrier for violation of the act may be made by any person, firm, corporation, association, or any mercantile, agricultural, or manufacturing society, or any body politic or municipal organization, or railroad commissioner or railroad commission of any state or territory. Act Feb. 4, 1887, c. 104, § 13, 24 Stat. 383 (U. S. Comp. St. 1901, p. 3164).

It appears to us that it was the purpose of Congress to assume jurisdiction over the entire subject-matter relative to interstate shipments from the time of the origin of such shipment down to the point where the shipment is entirely at an end and its character as a transaction of interstate commerce ceases. That such was the purpose of Congress is evidenced by the language of the act, and it is further emphasized when the conditions and the circumstances out of which that act originated and the evils it was intended to remedy are recalled. A system of rebating and

discrimination by interstate carriers in favor of some shippers and localities, and against other shippers and localities had become so prevalent, unjust, and disastrous in its effects that it became necessary for Congress to exercise directly and through the agency of the Interstate Commerce Commission its power over interstate commerce to an extent that had not theretofore been deemed necessary. But if Congress may not control the storage of interstate shipments and charges therefor, occurring before delivery of the shipment, and require the establishment of uniform rates as to shippers and localities under similar circumstances and conditions, there is left to the carrier a ready means of defeating the object of the law; or where state law does not prohibit, or where under a more liberal law in one state than in another an interstate carrier could give to its patrons, or some of them, storage facilities and rates which it refuses to others in the same state or in another state; or where no state legislation existed upon the subject carriers could fix a low charge or no charge at all for storage in one state, and a high rate in another state, upon the same class of freight and under similar circumstances; and if all states legislated upon the subject—it is hardly probable that there would be uniformity in the legislation, and by the law of one state a shipper would be required to pay a much lower rate, and probably have a longer free time for delivery, than a shipper in an adjoining state under a law which would require a higher rate and a shorter free time for delivery of any consignment. Under such conditions, discrimination between shippers and localities could be as effectively accomplished in many instances as if the carrier were permitted to rebate on the charges for services rendered in the transit of the shipment.

The contention of appellee that storage of freight after its arrival at the point of destination, awaiting the delivery of the shipment to the consignee, and charges therefor, are not part of an interstate commerce transaction, cannot be sustained. An interstate shipment does not come to an end until a delivery of the

consignment to the consignee. *State v. Eighteen Casks of Beer,* 24 Okla. 786, 104 Pac. 1093. And the mere placing of an interstate shipment in the carrier's depot or freighthouse to await delivery to the consignee does not terminate the interstate transaction and subject the property to the police power of the state. *Heymann v. Southern R. R. Co.,* 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178.

The evidence fails to disclose whether appellant has ever filed with the Interstate Commerce Commission a schedule of charges for storage or a statement of its practice, or regulations relative to storage of freight after its arrival at point of destination, and before delivery to the consignee. An agent of appellant testified that the charges demanded on the freight in this controversy were made under the direction of a circular received by the agent of the company at Cordell; but the record does not disclose whether this circular, attempting to fix the rate of charge on storage, had ever been filed with the Interstate Commerce Commission, or was in conformity with any order of that commission.

In *Mo. Pac. Ry. Co. v. Larabee Flour Mills Co.,* 211 U. S. 612, 29 Sup. Ct. 214, 53 L. Ed. 352, the mill company made application to the courts of Kansas for a mandamus to compel the railway company to transfer for it shipments of grain and flour in car load lots consigned from or to other states from the tracks of the Atchison, Topeka & Santa Fe Railway Company, over the transfer track of that company and a portion of the main track of the defendant, and a spur track to the mill and elevator of plaintiff. The railway company rendered similar services to all other shippers at the same station, but had refused to render this service to the mill company, because of disagreement between them over a demurrage charge on certain shipments of freight. The practice of the railway company of rendering such service to the other shippers, and of refusing it to the mill company, was a discrimination against it in violation of its common-law duties. From a judgment of the Supreme Court of Kansas affirming the decree

of the trial court awarding the writ, proceedings in error were taken to the Supreme Court of the United States, where the railway company questioned the jurisdiction of the Kansas courts upon the ground that the services which the mill company sought to require them to render were incidental to and directly affected interstate commerce, and that jurisdiction thereof had been conferred upon the Interstate Commerce Commission. The court, in an opinion by Mr. Justice Brewer, held that while jurisdiction had been conferred upon the Interstate Commerce Commission by act of Congress to hear complaints involving a practice of an interstate carrier, whereby the carrier discriminates against a shipper, and to make orders correcting the same, a mere delegation of such power to the commission did not disturb the authority of the state to compel the carrier to discharge its common-law duties and so render its service to shippers as not to discriminate between them, where it appeared that the commission had not acted upon the matter directly involved. Mr. Justice Brewer, speaking for the majority of the court, said:

"By the fact that Congress had intrusted power to that commission does not in the absence of action by it change the rule which existed prior to the creation of the commission. Congress could always regulate interstate commerce, and could make specific provisions in reference thereto, and yet this has not been held to interfere with the power of the state in these incidental matters. A mere delegation by Congress to the commission of a like power has no greater effect and does not disturb the authority of the state."

But we think that the facts in the case at bar and those parts of the interstate commerce act and acts amendatory thereof to be applied distinguish the case at bar from that case. We understand the effect of the decision in *Mo. Pac. Ry. Co. v. Larabee Flour Mills Company* to be that, where a railway company renders a service to some shippers which it refuses to others, the remedy provided by the federal act is only accumulative, and does not prevent a complaining party from resorting to the state courts to compel the carrier to discharge his common-law duties to him by

process of that court, where the Interstate Commerce Commission has not acted upon the subject. But, as to what services a carrier shall render in connection with an interstate commerce shipment, and what charges it shall make therefor, the federal statute not only makes it the duty of a carrier to file with the commission a schedule of its storage charges and all services to be rendered by the carrier in connection with the shipment and delivery of same, and prohibits it to charge any other rates than those specified in the tariff filed with the commission, but also prohibits it from engaging or participating in transporting any property until it does file such rates and charges as required by the act; and if a carrier violates the act by making charges without having filed its schedule of rates as required by the act, or charges rates in excess of those fixed by its tariff filed, it may be punished therefor, and a tribunal is provided in which complaint may be made of such violation of the act, and a procedure prescribed, and a remedy provided. If a state may, after the Hepburn act became effective, regulate by statutes, or by order of some commission vested with administrative or legislative power, the service that a carrier shall render in connection with an interstate shipment, and the delivery thereof, and fix the charges for such services, then we have the federal act prohibiting a carrier from making any charge until the same has been fixed by the filing of its tariff with the commission, and from rendering any other free service in connection with the delivery of the property than that named in the tariff; and at the same time may have a regulation by state authority authorizing and requiring it to do the very thing the federal act prohibits. Two statutes so in conflict cannot stand. The federal act directs that all charges made shall be just and reasonable, and, for an unjust and unreasonable charge, a remedy is provided.

We have been able to find no case from the Supreme Court of the United States, whose decision upon the question here involved would be controlling, that is decisive of this case; but *State ex rel. R. R. Com. of Indiana v. Adams Express Co.*, 171 Ind. 138,

85 N. E. 337, 19 L. R. A. (N. S.) 93, if not directly in point, strongly supports the conclusion we reach. That was a proceeding to compel an express company by mandamus to deliver, in cities having a population of 2,500 or more, express free to the places of business and residences of the consignees, as required by a certain act of the Legislature of the state of Indiana, approved March 6, 1901 (Laws 1901, c. 62). It was held that the state statute had been superseded by the Hepburn act, and that the writ of mandamus should be denied.

We also think that the reason urged against the validity of the order of the Corporation Commission under appellant's third contention is sound. A state, in the exercise of its police power, may, by act of its Legislature or by rule of some administrative agency upon whom the power has been conferred to make reasonable regulations, regulate by reasonable rule the place, manner, and time of delivery of merchandise, moving in the channels of interstate commerce; but it must not make such regulations as will burden or interfere with interstate commerce. *McNeil v. Southern R. R. Co.*, 202 U. S. 543, 26 Sup. Ct. 722, 50 L. Ed. 1142; *Houston & Tex. Cen. R. R. Co. v. Mayes*, 201 U. S. 321, 26 Sup. Ct. 491, 50 L. Ed. 772; *American Steel & Wire Co. v. Speed*, 192 U. S. 500, 24 Sup. Ct. 365, 48 L. Ed. 538. See, also, *Central Georgia R. R. Co. v. Murphey*, 196 U. S. 194, 25 Sup. Ct. 218, 49 L. Ed. 444, and *Southern R. R. Co. v. Commonwealth*, 107 Va. 771, 60 S. E. 70, 17 L. R. A. (N. S.) 364.

In *Central Railway Company v. Murphey, supra*, it is held that imposition by state statute upon the initial or connecting carrier of interstate commerce of the duty of tracing a shipment of freight and informing the shipper where and how the same was lost, damaged, or destroyed, when applied to interstate commerce, was void as in violation of the commerce clause of the federal Constitution.

In *Houston & Texas Central R. R. Co. v. Mayes*, a statute of the state of Texas, requiring that when a shipper of freight

shall make requisition for a number of cars to be furnished at any point indicated within a certain number of days from the receipt of the application, and shall deposit one-fourth of the freight with the agent of the company, the company failing to furnish the cars shall forfeit $25 per day for each car to be furnished, providing, however, that the law should not apply in case of strikes or other public calamities, was held an infringement upon the power of Congress to regulate interstate commerce and declared void.

In *McNeil v. Southern R. R. Co., supra,* it was held that an order of the State Corporation Commission requiring railway companies to deliver cars from another state to the consignee on a private siding beyond its own right of way was a burden on interstate commerce and void.

In the case at bar, the order of the Corporation Commission requires the railway company, in every case, where the consignee lives five or more miles from the station of the railway, to give to the consignee ten days' free storage of his shipment, irrespective of any and all contingencies, conditions, or circumstances. In the absence of congressional legislation upon the subject, a state may, in the exercise of its police power, require that a consignee shall have a reasonable time after the arrival of an interstate shipment to receive and take the same from the premises of the carrier, without extra charge than that made for the service of transporting the shipment, and might prescribe and require of the carrier to give notice of the arrival of any shipment; but the rule in question undertakes to do more than this. Although the consignee be present when the consignment arrives, or although, not present, he has immediate notice of its arrival, and no cause exists to prevent his receiving same immediately and removing it from the charge of the carrier, the order directs and compels the carrier to become his warehouseman for a period of ten days free of charge. It gives to the consignee, who has notice of the arrival of his freight and an opportunity to remove it, the same privi-

lege and free service that it gives to him who has not or may not have such notice; the only condition being that the consignee lives five miles or more distant from the station. It is true, in this case, that the consignee went to receive his freight immediately upon receipt of notice; but the constitutional validity of a law is to be tested, not by what has been done under it, but what may be done. *Southern R. R. Co. v. Commonwealth*, 107 Va. 771, 60 S. E. 70, 17 L. R. A. (N. S.) 364; *Stuart v. Palmer*, 74 N. Y. 191, 30 Am. Rep. 289. The common law imposes no duty upon the common carrier to render services as warehouseman other than such as are necessarily incidental to the transportation of the property. The order of the Corporation Commission requiring that free storage of ten days be given on all shipments to consignees living five or ten miles distant from the carrier's depot, although the consignees have notice of the arrival of the freight and opportunity to remove it, requires the carrier to give its property to such shippers for said period of time to be used as a warehouse. It thereby imposes an additional and unreasonable burden upon the carrier, and is, as to interstate shipments, void. Whether or not the order is not void, both as to interstate commerce and as to intrastate commerce, in that it requires certain free service to be given, in cases not necessarily incidental to the performance of its duties as a common carrier, and thereby takes property without due process of law, need not be determined here, for the application of the order to an intrastate shipment is not involved in this proceeding.

For reversal of the decree of the commission adjudging appellant guilty of contempt upon the second count of the affidavit or petition of appellee, appellant urges that the commission erred in permitting appellee, during the progress of the trial, to amend, or to have considered amended, his affidavit so as to allege a violation of order No. 10, instead of order No. 168, as originally alleged in the affidavit. During the progress of the trial, it was made to appear that order No. 168, with violation of which ap-

pellant was charged in the second count of the affidavit, was not in force and effect, either at the time the alleged offense was committed, or at the time of the trial. The commission on its own motion ruled that the affidavit could be and should be amended so as to show a violation of order No. 10, instead of order No. 168. These two orders are in most respects the same; there being, however, in some respects a difference in their provisions. The trial proceeded upon the theory that the amendment had been made, but no amendment in fact was made, nor a new affidavit filed. The action of the commission was error.

On May 29, 1908, the Legislature enacted a statute providing for the punishment of any corporation, person, or firm for contempt for the violation of any order or requirement of the Corporation Commission. Sess. Laws 1907-08, p. 228. Section 1 of the act makes any corporation, person, or firm that violates an order of the commission subject to a fine of not exceeding $500, and each continuance of the violation a separate offense. Section 2 of the act prescribes the procedure for contempt proceedings. It is provided that such proceedings may be instituted by any citizen of the state or other parties affected by the order of the commission by filing an affidavit with the Corporation Commission setting forth the acts of omission or failure to comply with such order or requirement.

Since the adjudication provided by the statute in these proceedings is wholly punitive, a proceeding thereunder must be deemed quasi criminal, if not criminal, and, in the prosecution of such proceeding, the procedure prescribed by the statute should be strictly pursued. 4 Encyc. of Plead. & Prac. pp. 767, 770, and authorities there cited. Before any proceeding for contempt may be begun, an affidavit setting forth the fact prescribed by the statute must be presented to and filed with the commission, and an amendment to such affidavit must likewise be verified, and to permit the same to be amended by interlineation, without the amendment being sworn to, is error. *State ex rel. v. Lavery,* 31 Or. 77,

49 Pac. 852; *State v. Kaiser*, 20 Or. 50, 23 Pac. 964, 8 L. R. A. 584. See, also, *Buck et al. v. State of Nebraska*, 75 Neb. 603, 106 N. W. 787.

Since, for the foregoing reason, this portion of the order of the commission must be reversed, it is unnecessary to decide whether, if the amendment of the affidavit had been made by the filing of a new affidavit by appellee the proceeding would then have been treated as a new proceeding, and whether it would not have been error for the commission to continue with the trial over the objections of defendant that it had not had an opportunity to prepare its defense to the new charge. Appellant also urges that order No. 10 is void, for the reason that it attempts to regulate interstate commerce. Section 2 of order No. 10 provides:

"Freight to be transported in less than car load lots shall be delivered to and received by each initial carrier at its freight houses, platforms or sheds, as may be customary, properly marked, and immediately after such delivery, and upon demand made to the office agent of the carrier or other agent in charge of each station, junction or intersection, together with proper tender of freight charges, if demanded in advance, and proper notification of the name of the consignee and destination, a proper bill of lading thereof shall be delivered to the shipper, and the carrier's control over and responsibility for such freight shall commence."

But neither the affidavit filed in this case nor the evidence discloses whether the consignment of freight which appellee is alleged to have tendered to appellant's agent, the acceptance of which was refused by the agent, was an interstate or intrastate shipment, and we therefore do not pass upon this contention.

The order of the commission is reversed, and the cause remanded.

DUNN, C. J., and KANE and TURNER, JJ., concur; WILLIAMS, J., not participating.