ATCHISON, T. & S. F. RY. CO. v. STATE *et al.*

No. 1976. Opinion Filed March 11, 1913.

1. **CARRIERS — Corporation Commission — Contempt Proceedings — Pleading—Jury Trial.** In a proceeding in contempt for the punishment of a corporation for the violation of an order of the Corporation Commission, pursuant to Act May · 29, 1908, Sess. Laws Okla. 1907-08, p. 228, verification of the information filed with the commission is waived by answering to the merits. **Held,** further, that in such proceeding the contemnor is not entitled to ·a trial by jury.

2. **SAME—Appeal from Orders of Commission—Presumption.** Evidence examined, and **held** that the prima facie presumption of reasonableness and justness attending the order of the commission fining appellant for violating rule 6 of order No. 168 requiring carriers to begin the forward movement of freight towards its destination within 24 hours after the bill of lading is signed, has not been overcome.

, (Syllabus by the Court.)

*Appeal from the State Corporation Commission.*

The Atchison, Topeka & Santa Fe Railway Company was assessed with a fine for contempt in violating an order of the Corporation Commission, and it appeals. Affirmed.

*Cottingham & Bledsoe,* for appellant.

*Chas. West,* Atty. Gen., and *Chas. L. Moore* and *C. J. Davenport,* Asst. Attys. Gen., for appellees.

TURNER, J. On November 6, 1909, appellee, the Plansifter Milling Company, a corporation, by unverified petition, informed the Corporation Commission, concerning appellant: .

"That on November 2, 1909, about 4 p. m., we billed out car flour and bran No. 32599CRI&P destined to Moore, Okla., and received B-L from their agent for same at this time. We called them by telephone on 11-3, 11-4, 11-5 and insisted upon same being pulled from our mill and started on destination. We took the matter up with Mr. Teasdale D. F. A. of said road and he had to wire Supt. W. K. Etter before they moved car, which was done about 5:30 p. m. on November 5th."

On November 9, 1909, the Corporation Commission issued its citation directed to appellant, and attached thereto a copy of said information, alleged a violation of the commission's order No. 168, and cited appellant to appear before the commission on a day certain and show cause why a fine should not be assessed against it for contempt. On January 12, 1910, came appellant and answered, and for cause, among other things, alleged that insufficient trackage in Oklahoma City caused a congestion of traffic which resulted in the car in question not being moved until November 5, at which time it was moved from the switch to the company's track and began its further movement to destination on November 6. On January 12, 1910, after hearing duly had, the commission found that appellant had violated rule 6 of the order No. 168, requiring freight to begin its forward movement towards its destination within 24 hours after the bill of lading is signed, and fined appellant $200 and cost for the violation of said order, in that it had failed to move the car delivered to it in the time thereby prescribed. The company brings the case here.

The information was unverified, but the commission nevertheless had jurisdiction of the subject-matter.

In *St. Louis & S. F. R. Co. v. State et al.*, 26 Okla. 62, 107 Pac. 929, 30 L. R. A. (N. S.) 137, which was, as this, a contempt proceeding, we said:

"On May 29, 1908, the Legislature enacted a statute providing for the punishment of any corporation, person, or firm for contempt for the violation of any order or requirement of the Corporation Commission. Sess. Laws 1907-08, p. 228. Section 1 of the act makes any corporation, person, or firm that violates an order of the commission subject to a fine of not exceeding $500, and each continuance of the violation a separate offense. Section 2 of the act prescribes the procedure for contempt proceedings. It is provided that such proceeding may be instituted by any citizen of the state or other parties affected by the order of the commission by filing an affidavit with the Corporation Commission setting forth the acts of omission or failure to comply with such order or requirement. Since the adjudication provided by the statute in these proceedings is wholly punitive, a proceeding thereunder must be deemed quasi criminal, if not criminal, and, in the prosecution of such proceeding, the pro-

cedure prescribed by the statute should be strictly pursued. 4 Encyc. of Plead. & Prac. pp. 767, 770, and authorities there cited. Before any proceeding for contempt may be begun, an affidavit setting forth the fact prescribed by the statute must be presented to and filed with the commission.  *  *  *  *  *State ex rel. v. Lavery,* 31 Ore. 77, 49 Pac. 852; *State v. Kaiser,* 20 Ore. 50, 23 Pac. 964, 8 L. R. A. 584.  See, also, *Back et al. v. State of Nebraska,* 75 Neb. 603, 106 N. W. 787."

What is said in that case is confined to a proceeding by affidavit. There was also a motion to quash. Section 2 also provides that the procedure may be by information. Further on the section reads: "Upon the filing of such affidavit or information above mentioned"—*i. e.,* information setting forth the acts of omission or failure to comply with any order or requirement of the commission—"it" shall be the duty of the commission to forward to such offending corporation  *  *  *  a copy of such affidavit or information.  *  *  *"

Section 3 provides that the default of defendant shall be deemed an admission of the material allegations in such affidavit or information, etc. As Bouvier's Law Dictionary defines an information to be "a complaint or accusation exhibited against a person for some criminal offense," it would seem that this statute intended to provide that in civil constructive contempts the procedure should be by affidavit, and in criminal or quasi criminal constructive contempts, by information. But upon this we express no opinion. It is sufficient to say that in contempts of this kind, proceeded against by information, verification thereof is unnecessary to vest the court with jurisdiction.

*People v. News-Times Pub. Co.,* 35 Colo. 253, was a proceeding by the Attorney General, by unverified information, in contempt against defendant for the publication of a newspaper article reflecting upon the court. The contempt alleged was declared by the court to be criminal, which, quoting from Rapalje on Contempts, sec. 12, was defined to be "all those acts in disrespect of the court or its process, or which obstruct the administration of justice, or tend to bring the court into disrepute." The objection was to the jurisdiction of the court on the ground

that the information was unverified.    But the court overruled the same and held verification to be unnecessary, and said:

"No common-law right of the respondent was violated, because, as will be seen by the authorities hereinafter cited, it was permissible at common-law to initiate this proceeding on unverified information."

—citing *People v. Court Sessions,* 31 N. Y. Supp. 375; *State v. Morrill,* 16 Ark. 384; *State v. Frew,* 40 N. H. 428; *R. R. Co. v. Androscoggin,* 49 Me. 392; *Bate's Case,* 55 N. H. 326; *Dandridge's Case,* 2 Va. Cas. 408; *Moore's Case,* 63 N. C. 397; *In re Daeton,* 105 N. C. 59; *Telegraph Newspaper Co. v. Commonwealth,* 172 Mass. 294; and also *State v. Shepherd,* 177 Mo. 205.

But, however this may be, if this information was by the statute (Comp. Laws 1909, sec. 6644) required to be verified, being intended for the personal benefit of the appellant, it may waive the same, and did so by answering to the information without moving to quash or set it aside. *In re Talley,* 4 Okla. Cr. 398, 112 Pac. 36.

It is next contended that as rule 6 only applies to intrastate shipments, the order is void as an interference with interstate commerce.   As the finding of the commission was, in effect, that the car in question was not so engaged, the burden of showing the contrary is upon appellant, as the order is *prima facie* just, reasonable, and correct.   Upon this point it is disclosed by the record that such contention was not set up in the answer, nor was any attempt made by appellant to prove it before the Corporation Commission.   The nearest approach thereto was, when appellant was attempting to prove that petitioner had defrauded it by securing a rate to which he was not entitled, and hence, had it known such to be a fact, the same would have justified a refusal on its part to remove the car at all, petitioner testified:

"Q.   Did you not use the milling-in-transit privilege in the billing of that car from Enterprise, Kansas, when you billed that car out from your mill to Moore, Oklahoma?    A. I used the billing on it that applied from Enterprise."

This was manifestly insufficient to prove the shipment was one interstate, the best evidence of which were the records of

appellant. As such would have disclosed the character of this shipment, it is but fair to presume that, had they been produced, the disclosure would not have been to the advantage of appellant. We therefore conclude that the shipment was not interstate, and being intrastate, as found, the order must stand. *A., T. & S. F. Ry. Co. v. State et al.,* 33 Okla. 158, 124 Pac. 56.

There is no merit in the contention that appellant was entitled to a trial by jury. Concerning contempts, in *People v. News Company, supra,* quoting from section 21 of Rapalje on Contempts, the court said:

"The framers of our Constitution never intended to thus interfere with the due and orderly administration of justice. It was not their purpose to have the procedure designated in the sections mentioned cover contempts of court, and thus give this class of offenses a status theretofore unknown in either the statutory or the common law. The constitutional guaranties apply to such acts as constitute violation of public and general laws. They leave contempts, which are simply acts in disobedience of judicial mandates or process, or which tend to obstruct the dignified and effective administration of justice, to be dealt with in the summary manner theretofore universally followed."

(But see Const., art. 2, sec. 25, as to orders of injunction or restraint.)

For the reason that, after reading the entire evidence, we are unable to say that the failure to comply with the commission's order was occasioned by a congestion of traffic which appellant did its best to relieve by theretofore and up to that time attempting in good faith to extend its trackage facilities, as contended, we are unable to say that the *prima facie* presumption of reasonableness and justness attending the order has been overcome, the same must prevail, and the order is affirmed.

All the Justices concur.