CHICAGO, R. I. & P. RY. CO. v. BEATTY.

No. 3304.     Opinion Filed July 15, 1914.

(141 Pac. 442.)

1.  **CARRIERS**—Failure to Furnish Cars—Interstate Commerce. An action for damages resulting from the failure of the carrier to furnish cars for the shipment of freight within a reasonable time after the date agreed upon between the shipper and the station agent of the carrier is not prohibited by the act of Congress regulating interstate commerce (Act Feb. 4, 1887, c. 104, 24 St. at L. 379 [U. S. Comp. St. 1901, p. 3154]), and the amendment thereto of June 29, 1906 (Act June 29, 1906, c. 3591, 34 St. at L. 584 [U. S. Comp. St. Supp. 1911, p. 1284]).

2.  **SAME**—Interstate Commerce Act—Operation. The act of Congress regulating interstate commerce supersedes the act of the territorial Legislature on that subject.

3.  **APPEAL AND ERROR**—Ground for Reversal—Instructions—Issue. It is prejudicial error for the trial court to give an instruction covering an issue not made by the pleadings, where such instruction tends to confuse the issues, and is calculated to mislead the jury.

(Syllabus by Galbraith, C.)

*Error from District Court, Caddo County;*
*Frank M. Bailey, Judge.*

Action by W. W. Beatty against the Chicago, Rock Island & Pacific Railway Company. Judgment was for the plaintiff, and defendant brings error. Reversed.

*C. O. Blake, H. B. Low, R. J. Roberts, W. H. Moore,* and *J. G. Gamble,* for plaintiff in error.

*A. J. Morris,* for defendant in error.

Opinion by GALBRAITH, C.   This was an action to recover damages charged to have been sustained on account of the failure of the railway company to furnish cars within a reasonable time, as agreed by the terms of an oral contract entered into between the plaintiff and the station agent, for the shipment of cotton seed from Verden, Okla., to Chickasha, Ind. T., and on

account of the failure to furnish said cars the seed spoiled, and the loss claimed resulted to the plaintiff. Two causes of action were declared upon. The material part of the first count of the amended petition, upon which the cause was tried, after the formal allegations and the statement that the plaintiff had ready for shipment 50 tons of cotton seed, and had arranged with the defendant's agent for cars to be set at Verden for shipment of same, charges:

"That on the 29th day of November, 1906, plaintiff went to the defendant's depot at Verden and offered said cotton seed for shipment and demanded of the defendant said car or cars of sufficient capacity to transport said cotton seed, and the defendant failed and neglected to furnish the same; that each day thereafter and at various times plaintiff demanded of the defendant said cars, and said defendant·negligently failed and refused to furnish the same for an unreasonable length of time, and in fact never did furnish the plaintiff cars in which to ship said cotton seed, although at the same time it was furnishing to other persons cars in which to ship cotton seed and other products from Verden to other points."

And it proceeds to charge that, by reason of the defendant's delay and failure to furnish said cars, said 50 tons of cotton seed became heated, spoiled, and wholly worthless for any purpose, to the plaintiff's damage in the sum claimed. The second count is in similar form, and is for failure to furnish cars for shipment of 250 additional tons of cotton seed, and charges a similar agreement and failure to furnish cars and the loss and destruction of the seed by reason of such failure, and alleges total damages in the sum of $3,300. The answer to this amended petition was a general denial. Upon the issues thus formed the cause was tried to the court and a jury, and judgment rendered for the plaintiff in the sum of $856. After the overruling of a motion for a new trial, the defendant perfected an appeal to this court.

It is first contended that the contract sued upon—and for a breach of which the recovery was had in the trial court—was illegal and void under the law as prescribed in the Interstate Commerce Act of Feb. 4, 1887, and the amendment thereto

of June 29, 1906. Section 3 of the original act (24 St. at L. p. 380) reads as follows:

"That it shall be unlaw ful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatever. * * * "

The contention of plainiff in error, as set out in its brief in regard to this amendment, is as follows:

"Under the federal Commerce Act, *supra,* every shipper and every class of shippers have the right not only to demand that their goods be transported at a fair and reasonable price, and that they be accorded fair and proper treatment, but that they be carried at the same price and under the same condition accorded to the most favored, and that the treatment, form, or contract, and method of doing business extended to one shall be open to all others, and a common carrier of goods has no right to discriminate or favor one shipper over another in rates or facilities."

All of which may be admitted to be true, but it does not follow therefrom that the contracts sued upon in the instant case are void or otherwise condemned by the provisions of the statute above quoted. The petition does not charge that the plaintiff was to receive under the contracts made with the station agent any special facilities or any special rate or any special privileges, not open to or granted other shippers at the time and place, or that he was making or was to receive any discrimination over and above other shippers at that point, but rather charges that he was being discriminated against, and was not being furnished the same facilities for shipping products that other persons at Verden were receiving from the defendant at that time. So far as the pleadings show, the contracts in suit were legal and binding. They did not attempt to impose upon the railway company any other or different obligations than those placed upon it as a common carrier by statute. It is charged that the company, through its agent, agreed to furnish cars to the plaintiff for the

shipment of his cotton seed within a reasonable time. The petition further charges a breach of each of these contracts on the part of the defendant and the resulting damages to the plaintiff on account thereof. In deciding a case for the breach of a similar contract, this court, Harrison, C., rendering the decision, said:

"The law does not require that a station agent be authorized to contract to furnish a certain kind of car, at a certain hour of a certain day, in violation of the prescribed rules, and in discrimination against other shippers; but it does require that he be authorized to furnish reasonable facilities within reasonable time for carrying on the business of the public, either upon his own authority or upon his demands or notice to the company that such facilities are required. This was all that was required by the shipper in the case at bar. He did not demand of the company to furnish a double-deck car on a certain day in violation of prescribed rules, or in discrimination against other shippers, nor did he seek to bind the company to such a contract; but eight days before the shipment he went in to consult the agent about when he could get such a car as he needed. The agent informed him that he could get same about eight days from that date. This number of days was considered, both by the agent and shipper, to be a reasonable time in which to obtain the cars. Plaintiff relied upon the agent's statements, and had a right to rely upon same, and, relying upon such statements, returned to his ranch and began preparation for shipment on the day mentioned. However, as stated before, within a few days before the day for the arrival of the car, he sent one of his men in to know if the car would be there, and was informed that it would be. On the day before he cut out his sheep and drove them in he sent his son in again to inquire of the agent, and was again informed that the car would be set for him. Instead of this, the car did not arrive for five days thereafter, during which time he was compelled to keep his sheep in unsheltered pens where he was delayed, sustaining the loss by shrinkage complained of. Under the record before us, especially in the absence of any showing to the contrary, the eight days was a reasonable time within which to have furnished the car required, and the five days' delay thereafter, in the absence of any showing to the contrary, was an unreasonable delay, and the jury was justified in so finding.

"In *Midland Val. R. Co. v. George*, 36 Okla. 12, 127 Pac. 871, which is an action against the railroad company for fail-

ure to furnish cars at the time promised in an oral agreement by the station agent, the first syllabus is as follows: 'Where a railroad company, by oral agreement with its agent, promises to furnish cars at a certain time, and on account of its failure to do so the freight fails to connect with the train on a connecting carrier, and the freight is damaged by the delay, the company is liable for actual damages caused by the delay.' " (*Midland Valley R. Co. v. Larson,* 41 Okla. 360, 138 Pac. 173, 176.)

The plaintiff in error excepted to instruction No. 1, which is as follows:

"You are instructed, gentlemen of the jury, that it is the duty of every railroad company operating a line of road in the state of Oklahoma for the transportation of freight, upon the verbal or written application of any shipper to the station agent to furnish car or cars within four days from 7 o'clock a. m. following said application, or when said application specifies a further date when said car or cars are required, giving no less than four days' notice thereof, computing from 7 o'clock a. m. of the day following said application, it shall be the duty of the company to furnish said car or cars on the day specified in the application, and the failure to comply with this law subjects said railway company to a penalty and renders liable for all actual damages such applicant may sustain by reason of said delay; provided, that in case of fire, washouts, lock out, or other unavoidable casualties, such railway company shall not be liable to furnish such cars within such time."

It was doubtless the intention of the court in giving this instruction to cover the law as laid down in section 521, Comp. Laws 1909. The contracts involved in the instant case, relating to interstate shipments, were not controlled by this statute of Oklahoma Territory, since the original act to regulate commerce, and the amendment thereto of June 29, 1906, enacted by the United States Congress, covered the subject of interstate commerce, and superseded the act of the territorial Legislature on the same subject. *St. L. & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089; *M., K. & T. Ry. Co. v. Walston,* 37 Okla. 517, 133 Pac. 42; *St. L. & S. F. R. Co. v. State,* 26 Okla. 62, 107 Pac. 929, 30 L. R. A. (N. S.) 137; *Chicago & Alton R. Co. v. Kirby,* 225 U. S. 155, 32 Sup. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501. However, there is another sufficient reason

for condemning this instruction, and that is, under the pleadings the questions covered by it were not in issue in the case. The contracts set out in the amended petition did not charge a breach of the duty sought to be imposed upon the carrier by this territorial statute. This instruction should not have been given; we cannot say that the jury were not confused and misled by it. It did not tend to define and clarify the issues raised by the pleadings, but rather tended to confuse and complicate them. The giving of this instruction was prejudicial error.

Again, it is contended that instruction No. 2 is in conflict with instructions Nos. 1, 7, and 8. No. 1 is set out in full above. In No. 2 the court instructed the jury, in effect, that if they found that the plaintiff made the application for the cars as alleged on the 26th and 29th day of November, 1906, it was the duty of the company to furnish the cars, unless prevented from doing so by "unusual and extraordinary congested condition of traffic, as herein explained," and if they found from the evidence that the company was not prevented from delivering the cars by reason of the "unusual and extraordinary congestion of traffic," and that the plaintiff suffered damages by reason thereof, they should find for the plaintiff. The court, in this instruction, did not attempt to define what was meant by "unusual and extraordinary congested condition of traffic." And in instruction No. 7 the jury were told that, in the absence of a specific contract to furnish cars at a definite time, "a rush of business or congested condition of company's freight business" would relieve the company from its obligation to furnish cars, and such "rush of business or extraordinary traffic or congested condition of traffic of the road" would be a defense to the action. And in instruction No. 8 the court tells the jury that, in the absence of a specific contract with the shipper, it is the duty of a common carrier to distribute the cars equally between shippers at points along its line. This instruction, in effect, tells the jury that the agent and a shipper could make a valid contract in direct conflict with the terms of the Interstate Commerce Act, and the amendments thereto, and thereby change the obligations imposed upon the

carrier by these statutes. Such is not the law. The giving of this instruction was also prejudicial error. *St. L. & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089.

Under the acts of Congress regulating interstate shipments by common carriers, the shipper and the company are forbidden to enter into contracts whereby any particular person is given any special facility or advantage not open to all other shippers at that time and place. If the contracts in suit gave or attempted to give the plaintiff such privilege or advantage, they were void, and no action could be maintained on account of the breach thereof. Or if the company's failure to furnish the cars at the time its agent agreed with the shipper to furnish them was occasioned by the congested condition of freight traffic over its line at that time, then it incurred no liability for not furnishing the cars. *Chicago & Alton R. Co. v. Kirby, supra; United States v. Union Stock Yards,* 226 U. S. 286, 33 Sup. Ct. 83, 57 L. Ed. 226; *Clegg v. St. L. & S. F. R. Co.,* 203 Fed. 971, 122 C. C. A. 273; *Elwood Grain Co. v. St. Joseph & G. I. Ry. Co.,* 202 Fed. 845, 121 C. C. A. 153; *St. Louis, I. M. & S. Ry. Co. v. West Bros.* (Tex. Civ. App.) 159 S. W. 142; *A., T. & S. F. Ry. Co. v. Holmes,* 18 Okla. 92, 90 Pac. 22; *St. L. & S. F. R. Co. v. Bilby,* 35 Okla. 589, 130 Pac. 1089. These issues were not clearly defined and submitted to the jury in the instructions as they should have been.

For these reasons, we conclude that the judgment appealed from should be reversed, and the cause remanded, with directions to grant a new trial.

By the Court: It is so ordered.