## STATE ex rel. ATTORNEY GENERAL v. OWENS.

No. 18081.　Opinion Filed May 24, 1927.

(Syllabus)

1. **Judges—Disqualification of Judge by Making Him a Witness—Necessary Showing as to Materiality of Testimony.**

In any action where the ground of the necessity of the presiding judge's testimony is relied upon to disqualify the judge, the application must by proper averment set out the materiality and necessity of such judge's testimony.

2. **Same.**

In any cause or proceeding a party is not entitled to call the presiding judge as a witness, without having theretofore made proper averments as to the materiality and necessity of such testimony, and thus destroy the court by the subtle proposed use of judges as witnesses.

3. **Evidence—Direct Contempt Proceeding—Judicial Notice of Court Records and Proceeding as Obviating Use of Presiding Judges as Witnesses.**

In direct contempt proceedings the court takes judicial notice of the records of the court and the acts of the respondent committed in court and those reflected by pleadings filed by him; therefore, no proper purpose is to be had in calling presiding judges as witnesses.

4. **Judges—Court not Disqualified by Having Directed Filing of Information for Contempt.**

The fact that the court instructed information of contempt to be filed against respondent does not entitle him to disqualify the court in proceedings to hear and determine the cause

5. **Contempt—Nature of Direct Contempt Proceeding—No Interest Disqualifying Judges.**

An action to punish for a direct contempt is prosecuted in the name of the state, in the interest of society, for the purpose of upholding the authority of courts as an instrumentality of government. There can be no pecuniary interest of individuals to be considered, nor interest of affinity or consanguinity. There can be no interest that disqualifies a court to proceed. The duty of the individuals comprising the court commands that they shall proceed in a summary manner.

6. **Contempt—Basis of Inherent Power of Courts to Punish for Contempt.**

It is the right of the people to cause their courts to be treated with respect, to enable lawful orders, judgments and mandates to be obeyed, and to protect them from intimidation and the approach of insults and pollution, that establishes the inherent power of courts to punish for contempt.

7. **Same—Statutes as to Change of Venue Inapplicable.**

Statutory provisions relative to change of venue have no application to proceedings to punish contempts unless such proceedings are expressly included eo nomine in the written law. Such provisions are not eo nomine included in section 2632, or section 2629, Compiled Oklahoma Statutes, 1921, or in any other statutory provision.

8. **Contempt—Nature of Contempt Proceeding.**

A contempt proceeding is sui generis. It is neither civil nor criminal, but may partake of either in its nature. It is triable only by the court against whose authority the contempt is charged.

9. **Same—Sufficiency of Information.**

Neither the Constitution, article 2, section 17, nor the statutes of this state make provision for compulsory affidavits to support an information as a basis for a contempt action. An information for a contempt filed by the Attorney General, positive and specific in its charges and verified on information and belief, is sufficient.

10. **Same—Inherent Power of Supreme Court to Punish for Contempt.**

This court, being created by the Constitution, has inherent power to punish for contempt, limited only by the Constitution.

11. **Same—Significance and Intent of Language Used by Litigant in Instrument Filed in Court.**

Where the language used by a litigant in an instrument filed and presented in court is such as to carry beyond question its own inherent and inevitable significance, the user must have intended the natural consequences of his use of such language.

12. **Same—Direct Contempt—Contemptuous Language in Motion Filed Reflecting Upon Members of Court.**

Language used by a litigant in his verified

motion for leave to file a petition for rehearing, filed in this court, wherein it was charged that an opinion was not written by a member of this court, but by an attorney in the action, that said judgment was rendered without evidence to support it and without proper consideration of briefs or records in the case, and that a conspiracy existed between members of the court and outsiders to render a corrupt judgment, and that an opinion was promulgated by a number less than a majority of this court as the opinion and judgment of this court, constitutes direct contempt of court under the statute (section 1697, Compiled Oklahoma Statutes, 1921) and the common law.

**13. Jury—No Right to Jury Trial in Direct Contempt.**

One charged with direct contempt is not entitled to a jury trial.

**14. Contempt—Punishment Assessed.**

Disposition of action—judgment of conviction—punishment directed at twelve months' imprisonment in the county jail and a fine of $5,000, and cost.

Original action by the State ex rel. the Attorney General against O. O. Owens for contempt. Judgment finding the respondent guilty as charged—assessing his punishment.

The Attorney General, by W. L. Murphy, Asst. Atty. Gen., for relator.

Chas. B. Cochran and D. H. Linebaugh, amici curiae.

H. B. Martin, A. Flint Moss, Hugh A. Ledbetter, and Christy Russell, for respondent.

RILEY, J. On January 7, 1925, there was filed in this court an information on the part of the Attorney General of the state of Oklahoma charging the respondent, O. O. Owens, with contempt of this court on two separate counts.

The first count avers that the respondent caused to be published on October 24th and 31st, 1926, and on November 1st and 2nd, 1926, in the Tulsa World, a newspaper published in the city of Tulsa and having a general circulation in the state of Oklahoma, a certain printed article, an advertisement of and concerning the Supreme Court of the state of Oklahoma and the Justices thereof, which article so published reflected upon the honor, integrity, and purity of this court and was designed, intended, and calculated by the respondent to hold up to public opprobrium and to incite public contempt for this court and certain Justices constituting the same, and for the purpose of leading the people of this state to distrust the fairness and impartiality of the decisions of this court and for the purpose of influencing, intimidating, and coercing this court and the Justices of the same in their future action

in connection with the case of V. V. Harris et al. v. R. D. Hudson, No. 17590, and V. V. et al. v. R. D. Hudson, No. 17590, 122 Okla. 171, 250 Pac. 532, and V. V. Harris et al. v. T. G. Chambers, No. 17409, 121 Okla. 75, 247 Pac. 695, and thus to impede and disrupt the due administration of justice with reference to said causes and others then pending in said court.

The second count charges the respondent with having filed in this court, on January 3, 1927, in cause No. 17409, V. V. Harris et al. v T. G. Chambers, a "motion of defendants Riverside Oil & Refining Company, a corporation, O. O. Owens, and G. R. Lefever, for leave to file petition for rehearing in said cause and to stay the mandate and writ of mandamus in said cause," which instrument was signed and sworn to by the said O. O. Owens, respondent, and wherein it was alleged that the opinion in said cause was not written by Justice Charles W. Mason, but by counsel for plaintiff in the cause, and that said opinion was handed down without consideration of the evidence in this cause and without any consideration of either the pleadings or the briefs filed therein, either by Justice Charles W. Mason or any other Justices of this court. In said instrument respondent further alleged that in an opinion of this court filed July 7, 1925, in cause No. 13646, styled "Riverside Oil & Refining Co. et al v. Lynch et al.," 114 Okla. 198, 243 Pac. 967, Justice J. W. Clark prepared an opinion under the direction and control of Chief Justice George M. Nicholson, who was alleged to be in conspiracy with one J. B. Dudley, counsel in said cause, and that the opinion and judgment therein was prepared without knowledge of the contents of the case-made therein and without consideration of the briefs in said cause and without a concurrence of a majority of this court, and that the same was filed and promulgated as the decision of this court and that a mandate was issued therein and that such acts constituted in law and in fact a fraud.

On March 29, 1927, the respondent filed a demurrer, objection to the jurisdiction of the court, and an application requesting certain members of the court to certify their disqualifications. On April 23, 1927, the application to disqualify certain of the Justices was denied as to seven members of the court so challenged, and Mr. Justice Hunt thereupon certified his disqualification to further sit in said cause.

Our opinion shall be directed, first, to the application requesting certain members of this court to certify their alleged disqualifications. By the application it is asserted:

(1) That said Justices and each of them are biased and prejudiced against the respondent.

(2) That said Justices and each of them are interested in this cause.

(3) That Justice J. W. Clark and Justice Fletcher Riley are disqualified by reason of a certain judgment entered in Cause No. 18080, State of Oklahoma ex rel. the Attorney General v. H. B. Martin, 125 Okla. 24, 256 Pac. 667, whereby said Justices were adjudged to be disqualified to sit and try cause No. 18080, a companion case to the instant cause and growing out of the same controversy.

(4) That it will be necessary in the trial of this cause to use, and it is the intention of the respondent to use the said Justices aforesaid as witnesses.

(5) That the rule to show cause herein shows on its face that this court, except Robert A. Hefner, is the informer and prosecutor against respondent and that under the Constitution and laws of this state said Justices are disqualified herein.

(6) That all of the Justices certified their disqualifications in cause No. 18080.

(7) That by reason of the certified disqualifications of Justices in cause No. 18080, and by reason of the judgment in cause No. 18080, whereby Justices Clark and Riley were by mandamus forced to certify their disqualification, that all of said Justices are disqualified herein.

(8) That there is now pending in the district court of Oklahoma county a cause styled Fletcher Riley v. O. O. Owens et al., which is a damage suit for $200,000, which said suit grew out of the matter and things set out in the information for contempt in this cause, and by reason of which Fletcher Riley is especially disqualified to try this cause.

It must be borne in mind that the order entered by this court in cause No. 18080, wherein seven Justices of this court declined to sit further in that cause, specifically denied the motion filed by that respondent to require the challenged members to certify their disqualifications. In that case this court clearly recognized that under the law applicable to contempt cases the members of the court against whom the contempt was committed were not disqualified to sit. It must likewise be remembered that the respondent Martin in cause No. 18080, sought a writ of mandamus in cause No. 18123, filed and presented to the regularly elected Supreme Court, wherein it was sought to compel Justices Clark and Riley to certify their alleged disqualifications, and in that action this court entered a judgment denying the writ, Justices Clark and Riley not participating therein.

We now pass to the fourth contention of the respondent, to wit, "that it will be necessary in the trial of this cause to use, and it is the intention of the respondent to use the said Justices aforesaid as witnesses," and that, therefore, the Justices are disqualified.

In the early case of Johnson v. Wells, 5 Okla. Cr. 599, 115 Pac. 375, it was alleged that the judge was a material witness for the petitioner upon the trial of his case. The Criminal Court of Appeals held that:

"Even if the petition for a writ of mandamus had been filed in time, we could not disqualify respondent upon the bare allegation that he was a material witness for the petitioner If so, we would place it within the power of any defendant to disqualify a judge in any case where he was willing to swear that such judge was a material witness in his behalf."

In any cause, civil or criminal, where the ground of the necessity of a judge's testimony is relied upon for a change of judge, the application must by proper averment show that such judge as a matter of fact is a material and necessary witness in such cause. In the instant case there is but the bare conclusion.

In the case of Powers et al. v. Cook et al., 48 Okla. 43, 149 Pac. 1121, it was held that a trial judge of a court of record before whom a cause is tried with a jury cannot testify for one of the parties thereto over the objection of the other as to a material point at issue.

The following cases hold that the judge before whom a case is on trial is not a competent witness: Rogers v State, 60 Ark. 76, 31 L. R. A. 465; Maitland v. Zanga, 14 Wash. 92, 44 Pac. 117; People v. Dohring, 50 N. Y. 374, 17 Ann. Rep. 349; Shockley v. Morgan, 103 Ga. 156 29 S. E. 604; People v. Miller, 2 Park. Cr. 197.

In State v. Damaio, 69 N. J L. 590, 55 Atl. 644, it was held:

"A party cannot call a judge as a witness in a cause where the court is held by a single judge and thus destroy the court."

In Burk et al. v. Territory, 2 Okla. 499, 37 Pac. 829, it was held that courts take judicial notice of their own proceedings, and in a contempt proceeding, where the contempt consisted of an improper publication

concerning matters pending in court and concerning the judge's action, the publication being admitted, the court could determine all of the necessary facts without other evidence of what occurred in court than the court's judicial knowledge, and without the necessity of a formal trial, including the introduction of evidence. To the same effect are: Goodhart v State, 84 Conn. 60. 78 Atl. 853; People v. Hille, 192 Ill. App. 139; People v. Stone 181 Ill. App. 475.

The trial of this respondent has passed. We now know that the respondent did not in fact call or request any Justice or other witness to testify in his behalf. We hold that in any case other than contempt, when a judge of the court is desired to be called as a witness, the party desiring to so use him must set forth in detail, averments of the materiality and necessity of such testimony. To hold otherwise is to hinder justice, to lower the standard of courts, and to bring them into contempt. Maitland v. Zanga, supra.

While, under the Constitution, section 25, article 2, it is provided, "In no case shall a penalty for punishment be imposed for contempt until an opportunity to be heard is given," and consequently the respondent is entitled to a hearing, he is not entitled to destroy the court which proceeds against him by the subtle proposed use of the judges as witnesses in his behalf.

In a contempt case the court may and should take judicial notice, not only of the records of the court, but of the acts of the defendant committed in the presence of the court or reflected by pleadings by him filed therein. Therefore, there is no proper purpose to be had in calling the judges of the court as witnesses in contempt. cases.

It is contended that the Justices and each of them are interested in this cause, and, therefore, disqualified.

Section 2632, Compiled Oklahoma Statutes, 1921, provides:

"No Justice of the Supreme Court of this state or Judge of the Criminal Court of Appeals shall participate in the decision of any cause in such court appealed thereto from a lower court of said state, in which court such Justice or Judge was judge presiding at the trial of such cause; and the same qualifications shall apply to the members of the Supreme Court and Criminal Court of Appeals as to other courts of record; and whenever any member of either of said courts is disqualified, the same shall be entered of record in such court and such disqualifications of such members shall forthwith be certified by the clerk of such court to the

Governor of the state, who shall appoint some members of the bar of the state, possessing the same qualifications as the members of such court, to sit as special judge in said cause."

In said section is contained the clause "and the same qualifications shall apply to the members of the Supreme Court and Criminal Court of Appeals as to other courts of record," which manifestly refers to section 2629, Compiled Oklahoma Statutes, 1921, which is as follows:

"No judge of any court of record shall sit in any cause or proceeding in which he may be interested, or in the result of which he may be interested. or when he is related to any party to said cause within the fourth degree of consanguinity or affinity, or in which he has been of counsel for either side, or in which is called in question the validity of any judgment or proceeding in which he was of counsel or interested, or the validity of any instrument or paper prepared or signed by him as counsel or attorney, without the consent of the parties to said action entered of record: Provided, that the disqualifications herein imposed shall not exclude the disqualifications at common law."

There is no contention that any of the Justices are related to any of the parties within the fourth degree of consanguinity or affinity as contained in said sections above considered in pari materia, or that they have been counsel for either side, nor that as counsel or attorney they have prepared an instrument or paper, the validity of which is being questioned, nor in fact is the validity of any paper being questioned.

While under the fifth paragraph of respondent's application he contends that the challenged Justices informed against and are prosecuting him in this action, and it is true the rule to show cause and the action was begun at the instance of this court, surely respondent does not have the temerity to assert that in the proper case the court against which a contempt is committed is without power to act and having moved to bring the matter to trial is therefore disqualified. Such is not and never has been the law.

What is an interest such as would disqualify a Justice of the Supreme Court in a civil or criminal cause or proceeding pending before him?

Can it be said that the result of this action would in any way affect a suit pending between one of the judges and the respondent in the district court of Oklahoma county? If so, how would it so affect it? Neither the Constitution, the statute, nor the com-

mon law recognizes an imaginary interest in the result of lawsuits.

The English practice was commented on in the case of Ex parte Fairbank Co., 194 Fed. 978, as follows:

"At the common law substantial or direct interest in the event of litigation, or close ties of blood or affinity, were the only causes of disqualification of a judge. * * * These are the only causes for the disqualification of a judge under the common law of England as now administered in England." Fulton v. Longshore, 156 Ala. 611, 46 South. 989.

Hence at common law a judge could not be recused in even civil or criminal matters because of bias or prejudice alleged or proven.

In Cheuvront v. Horner (W. Va.) 59 S. E. 964, that court said:

"To disqualify, the interest of the judge must be a pecuniary one. It must be in the subject-matter of the cause and not merely in a legal question therein involved."

In Holt v. Holt, 23 Okla. 639, 102 Pac. 187, this court had under consideration the disqualification of H. B. Martin, who acted as referee in said cause, and who, according to the allegations, was an attorney for a litigant in a case then pending in which the facts involved and the law applicable thereto were all substantially the same as in the case which was submitted to him as referee, and this court laid down the rule that:

"In order to disqualify, the interest of the judge must be in the subject-matter of the cause, and not merely in a legal question involved, and a referee, in an action growing out of a divorce suit, brought to secure an enlargement of the alimony allowed, within the scope of the reference, sits as the judge of the court, and will not be held disqualified solely and on account of alleged interest, where the facts relied on to establish such disqualification are that he was engaged in the practice of law, and was then employed as an attorney in a cause in which the facts and legal questions involved were substantially the same as in the cause referred to him."

This is an action in the name of the state of Oklahoma against respondent, the result of which can only inure to the benefit of the people of the state of Oklahoma. It is the right of the people to cause their courts to be treated with respect. It is the public interest, and not the personal pride of the judges, which establishes this inherent power of courts to punish for contempts. It is the public will that they command respect and obedience to their lawful orders and mandates; without that right and will enforced, the law would become a dead letter and fraud and violence would prevail. As judges of this court we would be unmindful of our trust, we would become traitors to the people, if we did not demand the respect due a judicial tribunal over which we have been commissioned to preside by the sovereign citizens of the state of Oklahoma.

From Roman antiquity, we are afforded a heritage in the emblematic form of the blinded Goddess of Justice—Justitia. She holds aloft in her left hand the scales—untouched—in her right she holds the unsheathed sword, as a means to enforce her command that none shall disturb the balance of even and exact justice. She is blinded to the balance struck; but she is ever alert that none shall interfere—truly she is the jealous mistress.

The duty and responsibility of a Justice to protect the court over which he presides cannot be evaded, for by evasion the scales of justice may be destroyed. If the brother or father of a presiding Justice enter the court and by physical act or insolent behavior commit a contempt, could it be said that the Justice should retire from the bench and thus permit the court to be even momentarily destroyed? Certainly not. His duty is clear. Ties of blood will not relieve nor excuse him. Nor can there be a pecuniary interest to recuse, for if there be a pecuniary interest in the subject-matter pending out of which the contempt grows, the judge is for that and in that disqualified and eliminated before sitting. So the pecuniarily interested judge is not and cannot be a judge before whom a contempt, direct or indirect, can be committed.

The statutes governing change of venue in civil and criminal cases has no application to contempt proceedings. That question was before the Supreme Court of Arizona in the case of Van Dyke v. Superior Court of Gila County (Ariz.) 211 Pac. 576:

"The question therefore arises whether this proceeding in contempt is either a civil or criminal action within the meaning of these Code provisions The idea that this proceeding is in any sense a civil action may be at once dismissed. It is no less certain that it is not a criminal action which is to be prosecuted by indictment or information as provided by our Constitution and Penal Code (Const., art. 2; Penal Code, p. 750). It is perhaps not unwarranted to say that virtually all the authorities which announce any express holding as to the nature of a proceeding to punish for criminal contempt, go upon the assumption that such a proceeding is sui generis, being the exercise of the inherent power of courts to free themselves from influences calculated or tending to ob-

struct, embarrass, or corrupt the administration of justice. From these general principles, in their bearing upon the specific cases of applications to secure changes of venue or to disqualify the presiding judge, the rule is deduced that unless the statute contain language broad enough in meaning to include a proceeding instituted to punish for contempt, the change of judge or venue cannot be made, and that the language 'criminal action' or 'civil action' is not to be interpreted as embracing a contempt proceeding."

This question was also before the Supreme Court of Wyoming in the recent case of Tucker v. State ex rel, Snow, 251 Pac. 460. The first paragraph of the syllabus is as follows:

"Neither Comp. St. 1920, 6419, 6421, relating to change of judge in civil cases, nor section 6423, relating to change in criminal cases, authorize change of judge for bias or prejudice in contempt proceedings."

Rapalje on Contempts, p. 110, states:

"It may safely be laid down as a general rule that statutory provisions relative to change of venue have no application to proceedings to punish contempts, unless such proceedings are expressly included, eo nomine, in the written law."

The Supreme Court of the United States in the case of Bessette v. Conkey, 194 U. S. 335, 48 L. Ed. 1005, laid down the rule in a contempt case that a contempt is neither civil nor criminal in fact, but sui generis. These words are used by Mr. Justice Brewer, who delivered the opinion:

"A contempt proceeding is sui generis. It is criminal in its nature, in that the party is charged with doing something forbidden, and, if found guilty, is punished. Yet it may be resorted to in civil as well as criminal actions, and also independently of any civil or criminal action."

And further:

"It is true they are peculiar in some respects, rightfully styled sui generis. They are triable only by the court against whose authority the contempts are charged."

See O'Neal v. United States, 190 U. S. 36, 47 L. Ed. 945, 23 Sup. Ct. Rep. 776.

In Ex parte Fisk, 113 U. S. 713, 28 L. Ed. 117, 5 Sup. Ct. Rep. 724, it was said by the Supreme Court of the United States in a contempt case:

"This principle has been uniformly held to be necessary to the protection of the court from insults and oppression while in the ordinary exercise of its duties, and to enable it to enforce its judgments and orders necessary to the due administration of law and to the protection of the rights of suitors."

Contempt of court is not a crime in the state of Oklahoma. Under section 1500, Compiled Oklahoma Statutes, 1921, only those acts are crimes that are declared so by statute—contempt is not made a crime by statute.

Section 2291, Compiled Oklahoma Statutes, 1921, provides:

"A criminal act is not the less punishable as a crime because it is also declared to be punishable as a contempt"

—thus recognizing a clear distinction between acts which may constitute a crime and acts which may constitute contempt.

Section 20, article 2, of the Constitution, provides that in all criminal prosecutions the accused shall have the right to trial by jury. This provision is all-embracing as to all crimes. The framers of the Constitution clearly intended that contempt should not be classed as a crime, for by section 25, article 2, the duty is specifically left to the Legislature of defining contempts and of regulating proceedings and punishment in such matter, and a jury trial is by said section provided for the purpose of passing on the guilt or innocence of the accused only in the case of a person being charged with violating or disobeying, when not in the presence of the court, of an order of injunction or restraint.

As judges of this court we are interested to the extent that the honor and dignity of this court shall be respected; that the orders and mandates of this court shall be obeyed, and when in the course of duty under our commission from the people, it becomes necessary by contempt proceedings or otherwise to protect the adjudicated property rights of the citizens of this state when even and exact justice has been done between litigants, then to that extent and to that extent alone are we interested.

An interest sufficient to disqualify a judge is well considered in the case of Trustees Int. Imp. Fund v. William Bailey, 10 Fla. 213. The last paragraph of the syllabus is as follows:

"A judge, as well as a juror, must be immediately interested in the very issue in question, which interest must not be uncertain or speculative. A mere speculative possibility of such an interest is no sufficient ground for a principal challenge to a juror or judge."

In the body of the opinion it is said:

"Does a speculative interest—which may or may not exist in one way or the other, as in this case, for it cannot be known

whether the company would be most bene-fited if the fund were or were not enjoined upon the application—enter the mind of the judge so as to influence him?

"How could he be influenced, when he neither knows, nor can know, how he is to be benefited?

"The interest which disqualifies is a legal interest, certain and dependent on the re-sult of the case."

And further it is said:

"This disqualification must be a legal one, not an imaginary one, nor one of feelings of delicacy, nor of mocked inconsistence, but must be valid in law."

In Waterhouse v. Martin, Peck's Reports, vol. 7, p. 374, the Supreme Court of Tennes-see held that the objection made to Justice Haywood by reason of the fact that a liti-gant was connected with him by affinity was not good. The Constitution of Tennessee did not fix the degree of affinity that would disqualify a judge, but left it to the court's determination, and in speaking of the con-stitutional provision, Judge Whyte, on p. 382, said:

"This is the mandate of the people of Ten-nessee to every judge of the state, given by the most solemn of instruments. the Consti-tution, and in its nature it must be a man-date directed to him personally, to be exe-cuted by him according to his own judgment. and not dependent on the judgment or opin-ion of others. If the import of the mandate is dubious. as the argument at the bar on its construction implies. the very nature of the office of judge recognizes no superior or intermediate power between the mandate and himself, under, or by means of which, a construction of it is to be given for his gov-ernment, or by which his judgment therein may be directed. controlled, or superseded. Its execution is likewise personal and solely with himself. and incapable of being resist-ed by the interposition of other, or of being omitted, and its omission excused or justi-fied by the like interposition. As he is the sole judge, so he has the whole responsibili-ty. If in this respect he disobeys or trans-gresses the Constitution. he is answerable by impeachment. and it would be an argu-ment addressed to the mercy. not to the jus-tice. of the court of impeachment. that such and such was not his own judgment and act, but the judgment and act of two other judges of equal powers and authority."

It was further said on p. 385:

"Many cases might be put. but which I deem unnecessary. to show. that if a ma-jority has the physical power of qualifying or disqualifying the minority. there is no calculating the consequences. By this mode, a judge might be compelled to sit upon. and adjudicate the cause, when his own son, or his own father. is a party. These are ex-treme cases it is true, and not likely to hap-pen, but they are within the principle, and being so, they are the best kind of cases to test the correctness of that principle, for they present it naked and undisguised, free from those softening circumstances, which, in less strong cases, might veil its innate de-formity, but that at some time or other, on a proper occasion, would produce the most baneful effects on society."

On page 386, ti is stated that in a subse-quent part of the term Judge Haywood de-livered the final opinion of Judge Peck and himself as follows:

"That it is the duty of this court, and be-longs to it only, to decide the meaning and extent of the term 'affinity' as used in our Constitution."

The court fixed the rule of affinity and the extent to which it applied, and con-cluded by saying:

"We are therefore of opinion that the spirit and meaning of the term 'connected with him by affinity,' used in the Constitu-tion, ought not to be extended beyond the definite meaning which it has in writs, stat-utes, and other legal instruments; that the exceptions made to Judge Haywood are not valid. and that the present judges can con-stitutionally and legally form a court for the decision of this cause."

The decision of the court on the subject-matter of the litigation was rendered by Judge Haywood. so challenged.

Neither the Florida nor the Tennessee ci-tation concerned a contempt, but both of them support our view as to an interest suf-ficient to recuse a judge.

In the case of In re Fite, 76 S. E. 420, the Georgia Court of Appeals, after determining it was the duty of the court and judges thereof against which a contempt had been committed to proceed to trial, said:

"A judge who. knowing his duty, does not dare discharge it, is unworthy of his high office, the judicial ermine should be stripped from him, and he should pass into oblivion."

In Dale v. State (Ind.) 150 N. E. 781, it was held that a contempt is neither a civil nor a criminal action. It was there said:

"It has been the general rule that con-tempts' of the court have been dealt with by the court and judge against which such contempt has been directed. * * * It is the invariable rule that it is for the court which made the order in an equitable proceeding to punish for contempt of the court based upon a refusal to obey or comply with the order made by the court. * * * The law recognizes no excuse why a change of venue ought to be granted from the presiding judge in such a summary proceeding. * * * But it is well recognized as now settled

that criminal contempts of the court as well as direct contempts are to be tried summarily by the court. The interference in the long-established practice of the court in trying such cases summarily would be violent should the change be made to the regular course and way of procedure as followed in the ordinary civil or criminal cases, in which the cases of contempt would be subject not only to removal from the judge by a change of venue, but to removal from the county; also subject to delay in the trial usually accorded to parties in civil action. Were the change to be made to civil procedure to any extent, the courts would lose that power so long recognized to preserve the dignity of the court and the good name thereof. Merchants' S. & G. Co. v. Board (1912) 201 F. 20, 120 C. C. A. 582; State v. Frew (1884) 24 W. Va. 412, 49 Am. Rep. 257."

In 6 R. C. L., p. 520, paragraph 33, these words are used:

"The power to punish for contempt, whether expressly conferred by some positive enactment or regarded as an incident to jurisdiction conferred upon the court. exists merely for the purpose of enabling it to compel due decorum and respect in its presence and due obedience to its judgments, orders, and process. Hence it is in no case authorized to inquire respecting or to punish contempts of any other court or tribunal, unless the latter is an agency or a part of the punishing court, and the contempt must, therefore, be regarded as a contempt of it and the power to punish as an incident for maintaining its authority. (Puterbaugh v. Smith, 131 Ill. 199, 23 N. E. 428, 19 A. S. R. 30; State v. Shepherd, 177 Mo. 205, 76 S. W. 79, 99 A. S. R. 624; In re Williamson, 26 Pa. St. 9, 67 Am. Dec. 374.) This is the rule even though the contempt constitutes also a libel on the judge. (Myers v. State, 46 Ohio St. 473, 22 N. E. 43, 15 A. S. R. 638.)"

In 13 C. J. 60, paragraph 83, it is said:

"Since no court except that against which a contempt is committed has power to punish it, the general rule is that a party accused of contempt is not entitled to a change of venue (Merchants' S. & G. Co. v. Chicago Bd. of Tr., 201 Fed. 20; Bloom v. People, 23 Colo 416, 48 Pac. 519; Crook v. People, 16 Ill. 534; State v. 2nd Jud. Dist. Ct., 30 Mont. 547, 77 Pac. 318; State v. Harney, 30 Mont. 192, 76 Pac. 10; People v. Williams, 51 App. Div. 102, 64 N.Y.S. 457; In re Brown, 168 N. C. 417, 84 S. E. 690; Noble Tp. v. Aasen, 10 N. D. 264, 86 N. W. 742), especially if the contempt was committed in the presence of the court."

13 C. J. 52, paragraph 69:

"Since contempt proceedings are substantially criminal in their nature, one court is not authorized to punish a contempt against another court or judge, unless such other court or judge is an agency or part of the court inflicting the punishment, as, for instance, where the court is composed of several divisions, or as in the case of a referee, or the like.* * *"

In Lamberson v. Superior Court of Tulare County (Cal.) 91 Pac. 100, it is said:

"Nor is the judge disqualified from sitting in the contempt proceedings. Petitioner's theory in this regard, if we understand it, is that the judge is disqualified from hearing the proceedings in contempt, because the contempt itself consists in imputations upon his motives, and attacks upon his integrity. Such is not and never has been the law. The position of a judge in such case is undoubtedly a most delicate one, but his duty is none the less plain, and that duty commands that he shall proceed. However willing he may be to forego the private injury, the obligation is upon him by his oath to maintain the respect due to the court over which he presides. As was said by the Chief Justice of this court in Re Philbrook, 105 Cal. 471, 38 Pac. 511, 45 Am. St. Rep. 59; 'The law which in such cases makes us the judges of offenses against the court places us in an extremely delicate and invidious position, but it leaves us no alternative except to allow the court and the people of the state, in whose name and by whose authority it acts, to be insulted with impunity, or to exercise the authority conferred by law, for the purpose of compelling attorneys to maintain the respect due to courts of justice and judicial officers.' Were the rule otherwise so that it was required that another judge should be cal'ed in to sit in the proceeding, the recalcitrant and offending party would need only to insult each judicial officer in turn until the list was exhausted and thus, by making a farce of legal procedure, go scatheless and unpunished."

In Myers v. State, 46 Ohio St. 491, 22 N. E. 43, it is said:

"Though the libel was, in large part, against the presiding judge, that fact did not disqualify him from trying the proceeding in contempt. It was not the libel against the judge which constituted the offense for which the respondent was liable as for a contempt of court. The offense consisted in the tendency of his acts to prevent a fair trial of the cause then pending in the court. It is this offense which constitutes the contempt. and for which he could be punished summarily, and the fact that in committing this offense he also libeled the judge, and may be proceeded against by indictment therefor, is no reason why he may not and should not be punished for the offense against the administration of justice.

"The statute clearly authorizes, as did the common law, courts to punish summarily, as contempts, acts calculated to obstruct their business. They could not be maintained without such power, nor could litigants obtain a fair consideration of their

causes in a court where the jury or judge should be subject, during the trial, to influences in respect to the case upon trial, calculated to impair their capacity to act impartially between the parties. Nor is there serious danger to the citizen in its exercise. Power must be lodged somewhere, and that it is possible to abuse it is no argument against its proper exercise. But we think the danger more imaginary than real."

In Clyma v. Kennedy, 64 Conn. 310, 42 Am. St. Rep. 194, it was held in a criminal action a justice of the peace is not disqualified from trying and sentencing one who has published a newspaper libel against him.

In Cook v. United States, 267 U. S. 517, 69 L. Ed. 767, Chief Justice Taft of the Supreme Court of the United States said that, while a judge must banish the slightest personal impulse to reprisal, he should not bend backward and injure the authority of the court by too great leniency, and therein the Chief Justice, speaking for the Supreme Court, gave expression as to the proper action where disqualification was sought as a scheme to drive the judge out of the case for ulterior motives, and announced the rule of law that:

"The scheme of committing acts of contempt palpably aggravated by a personal attack upon the judge, in order to drive him out of the case for ulterior reasons, shou'd not be permitted to succeed."

We judicially know that the respondent, by his attorney, in cause No. 36361, in the district court of Tulsa county, sued 125 defendants, joining numerous members of this court therein, alleged fraud and corruption, and by extraordinary process restrained members of this court from passing further on the subject-matter of the action in this court out of which this contempt grew (until he was prohibited solely in such restraint), and that then when the district judge was so prohibited, the respondent sought to intervene here and appeared by his attorney and contended that since certain Justices were sued and others called as witnesses, they should disqualify—a most preposterous contention. He contended in effect that when a satisfactory judgment to a party was not rendered a disgruntled suitor might sue the judge for deciding against him, allege fraud and corruption, make the judge a defendant to an ancillary action and thus disqualify the judge in the main action, thus change the forum and so on until a satisfactory judgment to him was rendered or until the list was exhausted from which judges might be drawn and un-

til patience ceased to be a virtue and the majesty of the law yielded to vexation. From the decision of this court therein an application for writ of certiorari was made to the Supreme Court of the United States, and by that court denied. His purpose in that case and as his purpose in filing this application was, as expressed by Chief Justice Taft in the Cook Case, supra, "A scheme to drive the judge (judges) out of the case."

In Connell v. State (Neb.) 114 N. W. 294, that court, speaking through Chief Justice Sedgwick, announced the rule as follows:

"When the acts complained of are done in the presence of the court, the defendant is not entitled to a change of venue on account of alleged prejudice of the court, nor is he entitled to trial by jury. * * *"

And further:

"It was the duty of the court to hear the matter himself, and the defendant's application for a change of venue was rightly overruled. These two propositions are elementary. * * *" State v. Newton, 62 Ind. 517.

In Crook v. People, 16 Ill. 534, it was held that informations for contempts were not within the meaning of their statutes in relation to change of venue.

In Jones v. Judge (La.) 6 South. 22, it was held:

"A judge has no right to recuse himself where a party to the case could not legally do so."

We have made an examination of the available cases reported bearing upon qualifications of judges, and we have been unable to find any case holding that a judge is disqualified to dispose of a contempt which has been directed against the court of which he is a member. We conclude that such an officer's duty is plain, and that duty commands that he shall proceed, however willing he may be to forego the private injury to himself and however inclined he may be to stand aside, in order that the people may be assured that justice with fairness is being administered in the court. We are now firmly convinced that judges sitting alone, against whom a contempt is committed, have no alternative but to hear, determine, and punish the contempt, if one has been committed against the tribunal of which they comprise the whole membership.

Having examined the cases from the highest court to the lowest and failing therein to find any opposed to the view herein expressed, let us now examine our Constitu-

tion, in order to ascertain whether a new rule is thereby invoked.

Article 2, section 6, of the Constitution provides:

"Right and justice shall be administered without sale, denial, delay or prejudice."

This section of our Constitution is based largely upon Magna Carta, chapter 40, which provides:

"We will sell to no man, we will not deny to any man, either justice or right."

Maryland's Constitution provides that every man ought to have remedy "speedily, without delay, according to the law of the land." Idaho's Constitution, art. 1, sec. 18, is substantially the same as ours. In the constitutional provisions of practically all of the states denial and delay of justice is prohibited. Arkansas (1874) 2-13; Colorado (1876) 2-6; Connecticut (1818) 1-12; Delaware (1897) 1-9; Florida (1885) Declaration of Rights 4; Illinois (1870) 2-19; Indiana (1851) 1-12; Kentucky (1890) 14; Massachusetts (1780) 1-11; Maryland (1867) Declaration of Rights 19; Maine (1819) 1-19; Minnesota (1857) 1-8; North Carolina (1876) 1-35. North Dakota (1889) 22; New Hampshire (1902) 1-14; Oregon (1857) 1-10; Pennsylvania (1873) 1-11; Rhode Island (1842) 1-5; South Carolina (1895) 1-15; Tennessee (1870) 1-17; Vermont (1793) 1-4; West Virginia (1872) 3-17; Wisconsin (1848) 1-9; Alabama (1901) 1-13; Mississippi (1890) 24; Montana (1889) 3-6; Wyoming (1889) 1-8.

The word "prejudice," in our constitutional provision contained, cannot be said to apply in contempts committed by a litigant after he has accepted the forum. Were it otherwise, the offending party need only to insult each judicial officer in turn until the list from which they could be drawn was exhausted, and thus, by making a farce of legal procedure, go scatheless and unpunished.

Our constitutional provision contains the mandate that "justice shall be administered without * * * denial, delay. * * *"

Contempt proceedings are expressly designated as summary actions, and wisely so, for Gladstone said: "Justice delayed is justice denied." Should we sit idly by and let the lawful orders and mandates of this court be delayed by contempt by a vacillating attitude, and in the meantime permit a rightful suitor to be delayed in his judgment, would be a denial of justice and a violation of the provisions of our constitutional enactment above quoted. To permit justice to be denied by a vacillating act of the court is to allow the Constitution, its provisions, and the rights of the people to go down to the same grave with the courts. How are fundamental and constitutional guaranties to be upheld without there be a court with courage to stand as a bulwark for constitutional liberties?

We, therefore, conclude that, under the Constitution, the statutes, and the common law, a judge against whom a contempt is committed is not disqualified to try and dispose of the contempt.

The respondent filed his application to disqualify, only; he offered no evidence by which the conclusions of his application might be established. He did not follow the process of law relative to mandamus proceedings to disqualify members of this court as provided by section 2633, Compiled Oklahoma Statutes, 1921, as was done by his counsel in cause No. 18080. In any event, in any action pending in this court or elsewhere in this jurisdiction, evidence should be presented, if any there be, showing the interest, prejudice, or bias of the judge. This the respondent did not do or offer to do. As applied to inferior courts, such evidence must be produced upon an application for writ of mandamus. As applied to the Supreme Court, as construed by this court in cause No. 18123, and by the special court sitting in cause No. 18080, such evidence must be presented in an application for writ of mandamus. Such is the established mode of procedure. The writer is of the view that the Supreme Court cannot exclude a member from sitting. It may make a rule to which it is expected a member will conform his action and govern himself. A member should answer a challenge to his qualifications himself, alone and at his peril. The court is a body created by the Constitution, and should not be considered as having power to destroy itself (but the recent practice is otherwise).

It was held in Homesteaders v. McCombs, 24 Okla. 201, 103 Pac. 691, 20 Am. & Eng. Ann. Cas. 181, that the sole power of this court to grant writs of mandamus was gained from section 2, art. 7, of the Constitution, and that by that authority only original jurisdiction to issue such writs extended to a superintending control over inferior courts, commissions, and boards created by law—surely it is an innovation

to consider a court issuing such a writ to itself or a part of its constitutional self.

We are of the opinion that the members of this court are not disqualified in this matter, and that they can and do legally and constitutionally form a court for the consideration and disposition of this cause.

The opinion or rule of law heretofore rendered or announced by this court contrary to the views herein expressed is hereby overruled, and the rule declared herein shall be applicable to all litigants in this jurisdiction.

The respondent next filed objection to the jurisdiction of this court and based the same, first, upon the allegation that the information filed herein is not verified as required by law.

At the suggestion of this court the information herein was filed by George F. Short, Attorney General of Oklahoma, and William L. Murphy in his official capacity as Assistant Attorney General of Oklahoma, and verified in the following form:

"State of Oklahoma, County of Oklahoma.

"Wm. L. Murphy, being first duly sworn, deposes and says that he is an Assistant Attorney General of the State of Oklahoma, that the allegations made by him in the first and second counts of the above information and each of the same, are true as he verily believes.

"(Signed) Wm. L. Murphy.

"Subscribed and sworn to before me this the 7th day of January, 1927.

"Ruel Haskell, Jr.,
"Notary Public.

"My Commission expires 12-29-27."

In Lamberson v. Superior Court of Tulare County (Cal.) 91 Pac. 100, it was said:

"Dealing first with the question of procedure which petitioner presents, this contempt (assuming for the moment that a contempt was actually committed) was one which took place in the immediate view and presence of the court, and the citation to show cause, which was timely made, did not require an affidavit to support it." McCormick v. Sheridan (Cal.) 20 Pac. 24; Ex parte Terry, 128 U. S. 289, 9 Sup. Ct. Rep. 77, 32 L. Ed. 405.

In Hughes v. People, 5 Colo. 436, an affidavit for a change of judges was presented to the court while in session by respondent's attorney, respondent, himself an attorney, being absent. The affiant was brought before the court by attachment, and that court said:

"It was in the face of the court and warranted the judge in taking cognizance of it

summarily, as though the words, instead of being written or read in court, had been spoken in facie curiae."

In Creekmore v. U. S., 237 Fed. 743, an information was filed by the United States District Attorney with the United States Court for the Eastern District of Oklahoma, setting forth that Creekmore sought to influence a juror in the trial of a case then pending. That information was verified by the United States District Attorney upon information and belief. The Circuit Court of Appeals said:

"Assuming, however, the necessity of an affidavit, or information supported by affidavit, as the basis of the proceeding, even if filed by a private prosecutor, there seems no ground to hold, in the absence of a statute, that a verification of the information upon information and belief is not sufficient. It is not our purpose to discuss these questions, interesting as they may be when they arise.

"The only American case that we have been able to find on the very question here before us, namely, how must an information by a public prosecutor be verified, is Emery v. State, 78 Neb. 547, 111 N. W. 374, 9 L. R. A. (N. S.) 1124. The defendant was charged with influencing a juror in a criminal case in which he was a party by agreeing to pay and subsequently paying him cash. Manifestly the public prosecutor would have no personal knowledge of the truth of such a charge. It is doubtful if he could accumulate affidavits that would positively state the facts showing such guilt. Many states have laws providing for compulsory affidavits, but our attention has not been called to any such federal statute. To say that voluntary affidavits must be obtained before the public prosecutor can start such proceedings is to say that one of the most heinous offenses known to the law, that of 'jury fixing,' shall go wholly unpunished. Confronted by such a danger, we have no hesitancy in holding that the public prosecutor can file an information for contempt, positive and specific in its charges, and verify it upon information and belief, and while such information may not justify the issuance of a warrant of arrest, it is not void, and where a rule is issued upon such information that defendant show cause, and upon the hearing, upon the testimony of sworn witnesses, the evidence shows the defendant guilty, he may be so adjudged, and that a warrant of arrest issued upon the conclusion of the case is upon 'oath or affirmation,' as provided in the Fourth Amendment to the Constitution. See Sona v. Aluminum Casting Co., 214 Fed. 936, 131 C. C. A. 232."

Neither the Constitution (article 2, section 17) nor the statutes of this state make provision for compulsory affidavits as applied to contempt cases. Conformable to the de-

cision of the Circuit Court of Appeals, we have no hesitancy in holding that the Attorney General can file an information for contempt, positive and specific in its charges, and verify it upon information and belief, and that when so done the same is not void.

The second contention in the objection to the jurisdiction of the court is that the information filed is void upon its face, for the reason that it charges in neither of its counts a contempt of court, or any public offense under the Constitution and laws of the state of Oklahoma. This we shall consider in the body of our opinion.

The third and last contention is that this court has no jurisdiction either of the subject-matter of said information or of this respondent.

We consider this contention without merit, for the reason that it cannot be successfully contended that this court has not the constitutional and statutory authority to punish an act as for contempt, nor the inherent power so to do.

The respondent next filed a demurrer and based it upon the grounds: (1) That this court had no jurisdiction of the subject-matter of said cause; (2) that the information filed did not state facts sufficient to constitute a contempt of court; and (3) because the pretended information filed in said cause is duplicitous.

Neither argument nor briefs were offered in support of the demurrer, and the same was overruled.

The respondent presented affidavits to the court concerning the absence of H. A. Ledbetter, one of the attorneys for him, and orally requested the postponement of the cause. The court advised respondent that he was represented by other counsel then present, A. F. Moss and H. B. Martin, and thereupon overruled the application for postponement of the cause.

The court thereupon asked the respondent whether he desired to be heard further as to why he should not be judged guilty of contempt under the second count of the information filed herein, and advised respondent that he would not be required at that time to plead or answer further to count No. 1 contained in said information, or until further order of the court. Thereupon the respondent verbally entered a plea of not guilty and demanded a jury trial, which demand for jury trial was by the court denied, the court holding that the matters

charged in the second count of the information constituted a direct contempt of court.

We shall now direct our attention to the holding of the court that the language employed by the respondent in his petition to the court is direct contempt committed in the presence of the court.

Rule 9 of the Rules of the Supreme Court provides:

"Such petition shall state briefly the grounds upon which counsel rely for a rehearing, and show either some question decisive of the case and duly submitted by counsel has been overlooked by the court, or that the decision is in conflict with the express statute or controlling decision to which the attention of the court was not called, either in brief or oral argument, or which has been overlooked by the court, and the question, statute, or decision overlooked must be distinctly and particularly set forth in the petition."

Respondent's petition was not filed until six months after decision and opinion were announced, notwithstanding the rules require it to be filed in 15 days.

The scandalous and scurrilous attacks contained in respondent's application for permission to file petition for rehearing could have been for no other purpose than an attempt to embarrass and intimidate this court, and to hold the same up to public ridicule and contempt. U. S. v. Craig, 226 Fed. 230; People v. Green (Colo.) 13 Pac. 514.

In Re Hanson (Kan.) 160 Pac. 1141, it was said:

"The matter thus far poured into the brief is irrelevant and grossly scandalous. No self-respecting court can for a moment think of tolerating such conduct." Cobb v. U. S., 172 Fed. 641; State v. Barnett (S. C.) 82 S. E. 795; In re Graves (Cal.) 221 Pac. 411; People v. District Court (Colo.) 68 Pac. 242; Reuben v. State (Wis.) 211 N. W. 926.

In Re Alfred Chartz, 85 Pac. 352, the Supreme Court of Nevada had under consideration the judgment punishing an attorney for contempt in filing a petition for rehearing in which the attorney stated that the opinion of the court was all wrong and written by politicians and for politics, that they did not know what they were writing about. The court held that the language used was contemptuous in the following words:

"If he really believed or knew of facts to sustain the charge he made, he ought to have been aware that the purpose of such a document is to enlighten the court in regard to the controlling facts and the law, and convince by argument, and not to abuse

or villify; and that this court is not endowed with power to hear or determine charges impeaching its Justices. On the other hand, if he did not believe the accusation, and made it with a desire to mislead, intimidate, or swerve from duty the court in its decision, the statement would be the more censurable. So that, taking either view, whether respondent believed or disbelieved the heinous charge he made, such language is unwarranted and contemptuous."

In McCormick v. Sheridan, 20 Pac. 24, the Supreme Court of California held the filing of a petition for rehearing containing insinuations and charges against the court was a direct contempt committed in the face of the court.

In the case at bar the respondent signed and verified the instrument filed in the court out of which this contempt action grows.

In Ex parte Sullivan, 10 Okla. Cr. 465, 138 Pac. 815, our Criminal Court of Appeals held:

"It goes without saying that when an attorney or party files a paper, reflecting upon the integrity, fairness and impartiality of the court, except where the statutes make it grounds for disqualifying the judge, or obtaining a new trial on account of alleged prejudice or bias, or for the purpose of change of venue, he thereby makes himself guilty of a criminal contempt."

In Lamberson v. Superior Court of Tulare County, supra, as to John Bashore, who had executed an affidavit which had been filed in court by his attorney, Lamberson, the California court held:

"Indisputably, therefore, John Bashore, upon the face of this record, was guilty of contempt committed in the immediate presence of the court."

In Coons v. State (Ind.) 20 A. L. R. 900, that court, in considering such a case as this, said:

"It is, therefore, a high contempt of court for the appellant to have sought to call to account the judge for his judicial acts elsewhere than before a constituted tribunal for impeachment."

And:

"This document having been filed in open court, if contemptuous at all, was a direct contempt, notwithstanding the persons who presented it had gone to their homes and were absent from the court at the time its contents became known."

In Re Pryor, 18 Kan. 72, an attorney addressed a letter to the trial judge containing the following statement:

"I can hardly believe that such is the fact, for it is directly contrary to every principle of law governing injunctions, and everybody knows it, I believe."

That Supreme Court sustained the judgment of the lower court, and used the following language:

"If the language or conduct of the attorney is insulting or disrespectful, and in the presence, real or constructive, of the court, and during the pendency of certain proceedings, we cannot hold that the court exceeded its power by punishing for contempt." 2 Bishop on Cr. Law (5th Ed.) ch. 12, sec. 242; 4 Blackstone 283; Commonwealth v. Dandridge, 4 Va. Cas. 408.

In Keeney v. U. S., 17 Fed. (2nd) 976, it was held:

"Whether the misbehavior was so near the court as to obstruct the administration of justice depends upon the character of the act done and its direct tendency to impede, embarrass, delay or obstruct the administration thereof."

We, therefore, hold that the contempt committed was a direct contempt and in the face of the court, for the reason that the respondent by signing and verifying the instrument filed knew and intended that the same would be deposited in the office of the clerk of this court, and he further knew and intended that the same should be presented and would in its natural course come before this court. We think the language of the instrument, verified and filed by respondent, falls within the statutory definition of direct contempt, section 1697, Compiled Oklahoma Statutes, 1921, in that the same was "insolvent behavior committed during the session of the court and in its immediate view and presence." However, we are of the opinion that the statutory definition of direct contempt does not exclude other forms of contempt known to the common law.

Section 170, Compiled Oklahoma Statutes, 1921, provides:

"The common law, as modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."

See, also, Section 2345 and section 3563, Compiled Oklahoma Statutes, 1921; Hosmer v. State, 24 Okla. Cr. 312, 218 Pac. 164, and Ex parte Gudenoge, 2 Okla. Cr. 110, 100 Pac. 39, to the effect that all courts have inherent power to punish for contempt.

The general rule is that any act which is calculated to impede, embarrass, or obstruct the court in the administration of justice will be considered as done in the presence of the court and will be held to be in direct contempt of the court. Stuart v. People, 4 Ill. 395; People v. Wilson, 64 Ill. 196, 16 Am. Rep. 528; Ex parte McCown (N. C.) 51 S. E. 957, 2 L. R. A. (N. S.) 603; Dunham v. State, 6 Iowa, 245; Field v. Thornell( Iowa) 75 N. W. 685; United States v. Anonymous, 21 Fed. 772; Ex parte Terry, 128 U. S. 289. The above rule was followed by the Criminal Court of Appeals in Hosmer v. State, supra, in which the court held that an assault committed by a litigant on the judge of the court during a recess of the court constituted direct contempt of court.

In Smith v. Speed, 11 Okla. 95, 66 Pac. 511, the Supreme Court of Oklahoma Territory, in paragraph 5 of the syllabus, said:

"The Legislature of this territory has no power to take away from the courts, whose jurisdiction originated in the organic act, the right to punish a contempt, and to either turn it over to a separate tribunal, and remove the hearing of it to another county, or to cause the matter to be submitted to a trial by jury."

Having decided that the act of the respondent constituted direct contempt, we pass to the contention made for a jury trial.

Article 2, section 25, of the Constitution provides:

"The Legislature shall pass laws defining contempt and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the state, shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

Section 1699, Compiled Oklahoma Statutes, 1921, provides as follows:

"In all cases of indirect contempt the party charged with contempt shall be notified in writing of the accusation and have a reasonable time for defense; and the party so charged shall, upon demand, have a trial by jury."

Thus it will be seen that the only constitutional provision for a trial by jury is when a person is accused of violating or disobeying, when not in the presence of the court, any order of injunction or restraint.

The only statutory provision for a trial by jury in contempt matters is section 1699, supra. We are not here concerned as to the constitutionality of this section, nor as to whether the Legislature had power to enact it under article 2, section 25, supra, for it clearly is not applicable in direct contempt, and if it applies at all, it applies to indirect contempt, and indirect contempt is defined by section 1697, Compiled Oklahoma Statutes, as follows:

"Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court."

The rule expressio unius exclusio alterius est applies, so that the Constitution (and statute for that matter) having provided what contempt proceedings shall be tried to a jury, it must follow that all other contempt proceedings are triable before the court. The right of trial by jury in contempt of any kind did not exist at common law.

The question of jury trial is settled conclusively by none other than the Supreme Court of the United States in Eilenbecker v. District Court of Plymouth County, Iowa, 134 U. S. 31, 33 L. Ed. 801, in which the court said:

"The contention of these parties is that they were entitled to a trial by jury on the question as to whether they were guilty or not guilty of the contempt charged upon them, and because they did not have this trial by jury they say that they were deprived of their liberty without due process of law within the meaning of the Fourteenth Amendment to the Constitution of the United States.

"If it has ever been understood that proceedings according to the common law for contempt of court have been subject to the right of trial by jury, we have been unable to find any instance of it. It has always been one of the attributes—one of the powers necessarily incident to a court of justice—that it should have this power of vindicating its dignity, of enforcing its orders, or protecting itself from insult, without the necessity of calling upon a jury to assist it in the exercise of this power."

In 35 C. J. 194, the universal rule is announced that:

"A respondent in contempt proceedings is not entitled to a trial by jury, except where a jury trial is expressly provided for by statute, and then only in the particular cases to which the statute applies. The fact that the act constituting the contempt may also be an indictable offense does not affect the

rule where the proceeding is not by indictment. The power of the court to punish summarily for contempt has existed from the earliest period of the common law, and is not within the application of constitutional provisions guaranteeing a trial by jury, or providing against depriving persons of their liberty without due process of law." In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; Interstate Commerce Commission v. Brimson, 154 U. S. 447, 14 Sup. Ct. 1125, 38 L. Ed. 1047, 155 U. S. 3, 15 Sup. Ct. 19, 39 L. Ed. 49; Merchants' Stock, etc., Co. v. Chicago Bd. of Tr., 201 Fed. 20, 120 C. C. A. 582; King v. Ohio, etc., R. Co., 14 Fed. Cas. No. 7800, 7 Biss, 529; U. S. v. Duane, 25 Fed. Cas. No. 14997, Wall. Sr. 102; Van Dyke v. Gila County Super. Ct., supra; Neel v. State, 9 Ark. 259, 50 Am. Dec. 209; People v. Tool, 35 Colo. 225, 86 Pac. 224, 117 Am. St. Rep. 198, 6 L. R. A. (N. S.) 822; Wyatt v. People, 17 Colo. 252, 28 Pac. 961; In re Clayton, 59 Conn. 510, 21 Atl. 1005, 21 Am. St. Rep. 128, 13 L. R. A. 66; Hunter v. U. S. (D. C.) 48 App. 19; McDougall v. Sheridan, 23 Idaho, 191, 128 Pac. 954; People v. Kowalski, 307 Ill. 378, 138 N. E. 634; People v. Rushworth, 294 Ill. 455; O'Brien v. People, 211 Ill. 354, 75 N. E. 108; People v. Kipley, 171 Ill. 44, 49 N. W. 229, 41 L. R. A. 775; People v. Hadesman, 223 Ill. App. 219; People v. Seymour, 191 Ill. App. 381; Oehler v. Levy, 168 Ill. App. 41; O'Neil v. People, 113 Ill. App. 195; Garrigus v. State, 93 Ind. 239; Bowermaster v. Walker (Iowa), 194 N. W. 208; Flannagan v. Jepson, 177 Iowa, 393, 158 N. W. 641, L. R. A. 1918 E., 548; Drady v. Polk County, 126 Iowa, 345, 102 N. E. 115; McDonnell v. Henderson, 7 Iowa, 619, 38 N. W. 512; Manderscheid v. Plymouth County Dist. Ct., 69 Iowa, 240; Eikenbery v. Edwards, 67 Iowa, 619, 25 N. W. 832; State v. Howat, 109 Kan. 376, 198 Pac 686, 25 A. L. R. 1210; State v. Johnston, 78 Kan. 615, 97 Pac. 790; State v. Becht. 23 Minn. 411; O'Flynn v. State, 89 Miss. 850, 43 South. 82, 11 Ann. Cas. 530; State v. Shepherd, 177 Mo. 205, 76 S. W. 79; Gandy v. State, 13 Neb. 445, 14 N. W. 143; State v. Matthews, 37 N. H. 450; State v. Doty, 32 N. J. L. 403, 90 Am. Dec. 671; Rutherford v. Holmes, 5 Hun., 317; State v. Little, 175 N. C. 743, 94 S. E. 680; In re Brown, 168 N. C. 417, 84 S. E. 690; In re Deaton. 105 N. C. 59. 11 S. E. 244; Baker v. Cordon, 86 N. C. 116, 41 Am. Rep. 448; State v. Markuson, 5 N. D. 147, 64 N. W. 934; Ammon v. Johnson, 3 Ohio Cir. Ct. 263; Atchison, etc., R. Co. v. State, 35 Okla. 532, 130 Pac. 940; Burke v. Territory, 2 Okla. 499, 37 Pac. 829; State v. Mitchell, 3 S. D. 223, 52 N. W. 1052; Crow v State. 24 Tex. 12; State v. North Shore Boom, etc., Co., 67 Wash. 317, 121 Pac. 467, Ann. Cas. 1913 D. 456. Darby's Case, 3 Wheeler (N. Y. 1824); People v. Turner, 1 Cal. 152. (1850); Taliaferro v. U. S., 291 Fed. 906 (1923); Barrett v. U. S., 288 Fed. 815 (1923); Patton v. U. S., 288 Fed. 812 (1923); Sandefur v. Canoe Creek Coal Co.,

293 Fed. 379 (1924); In re Barrett, 202 N. Y. S. 20 (1924); Lucia v. Utterback, 197 Iowa, 1181, 198 N. W. 626; West v. Cobb, 24 Okla. 662, 104 Pac. 361.

In Mathews v. Sniggs, 75 Okla. 108, 182 Pac. 703, it was held as to the right to jury trial:

"This right, declared to be inviolate by the Constitution, means only the right as it existed in the territory at the time of the adoption of the Constitution."

The right to trial by jury in equity cases does not exist, neither so in habeas corpus proceedings, nor many others. Keter v. State, 82 Okla. 89, 198 Pac. 866; In re Simmons, 4 Okla. Cr. 662, 112 Pac. 951; In re Taylor, 12 Chicago Leg. N. 187917; Fed. Cas. No. 13774; Pittman v. Byars, 51 Tex. Civ. App. 83, 112 S. W. 102; People ex rel. v. Grifenhogen, 154 N. Y. S. 965; Ex parte Crowley, 268 Fed. 1016 (1920).

If the cause is not criminal, a jury trial has been held unnecessary to due process; for example, arrest and confinement of diseased persons (Cooper v. Schultz, 32 How. Pr. [N. Y. 1886] 107); paupers (Adeline G. Nott's Case, 11 Me. 208 [1834]); inebriates (In re Sharp, 15 Idaho, 120, 96 Pac. 563 [1908]). Summary judgments on bonds have been upheld (Light v. Canadian Co. Bk., 2 Okla. 543, 37 Pac. 1075 [1894]; Murray's Admr. v. Alston, 1 Mill. Const. [S. C. 1817] 128); probate cases (Parker v. Hamilton, 48 Okla. 693, 154 Pac. 65 [1917]; In re Dolbeer's Estate, 153 Cal. 652, 96 Pac. 266 [1908]); administration of estates (Hildebrand v. Kinney, 172 Ind. 447, 87 N. E. 832 [1909]); guardianship (In re Bondy's Estate, 44 Cal. App. 466, 186 Pac. 811 [1920]); bankruptcy and insolvency (In re Wood, 210 U. S. 246 [1908]); military court martial (Kahn v. Anderson, 255 U. S. 1, 65 L. Ed. 469 [1921]). In admiralty cases trial by jury has never been recognized. U. S. v. La Vengeance, 3 Dall. (U. S. 1796) 297, 1 L. Ed. 610; Whelan v. U. S., 7 Crouch, (1812) 112; The Sarah, 8 Wheat. (1923) 391, 5 L. Ed. 644. So that it is a mistaken idea that due process of law requires a plenary suit and a trial by jury in all cases when property or personal rights are involved. The important right of personal liberty is generally determined by a single judge on a writ of habeas corpus, using affidavits or depositions for proof of facts. Assessments for damages and benefits occasioned by public improvements are usually made by commissioners in a summary way. Conflicting claims of creditors amounting to thousands of dollars are often settled by courts on af-

lidavits or depositions alone, and the courts of chancery, bankruptcy, probate, and admiralty administer immense fields of jurisdiction without trial by jury. In all cases that kind of procedure is due process of law which is suitable and proper to the nature of the cases, and sanctioned by the established customs and usage of the courts. Ex parte Wall, 107 U. S. 265 (1882).

Under a judgment of contempt, which partakes of the nature of a criminal proceeding, one may be punished by fine, imprisonment, or both, without trial by jury. Ex parte Miller, 91 Tex. Cr. 607, 240 S. W. 944.

There are no cases to the contrary. Respondent was not entitled to a trial by jury.

We now say from an examination of the instrument filed by respondent, Mr. Owens, that there is no evidence to sustain the truth of his assertions; that they were made without probable cause; that these assertions go beyond criticism or denunciation of the decisions to which reference is made and constitute an attack upon the integrity, the purity, the motives, and the fairness and honesty of this court as an instrumentality of government—one of the co-ordinate branches of our and his government, and as such it follows the language so used constituted a direct contempt of court. Thrice was the respondent called upon by the Chief Justice in open court and given an opportunity to show further why he should not be adjudged in contempt. Thus far he has failed to produce either witness or documentary evidence in justification or mitigation. In this proceeding he remains mute. His efforts have been directed toward the destruction of this court as such and to obstruct justice and to defy constituted authority. Such conduct should not be tolerated. Notwithstanding the bold contempt by the respondent committed, he does not offer to retract nor to prove the truth of his assertions. He is unrepentant.

It is, therefore, the judgment of the court, as more fully expressed in the judgment and sentence filed herein, that said O. O. Owens shall be imprisoned in the county jail of Oklahoma county, state of Oklahoma, for and during a period of twelve months, and that the said O. O. Owens shall pay a fine of $5,000, and the costs of this action, such fine and imprisonment to be punishment adjudged for contempt under the second count charged against him in the information herein filed and by the court adjudged by him to have been committed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, PHELPS, LESTER and CLARK, JJ., concur.

HEFNER, J., concurs in the conclusion reached, but is of the opinion that the punishment inflicted is too severe.

HUNT, J., not participating, having certified his disqualifications.

Note.—See under (1) 33 C. J. p. 1017, §187. (2) 33 C. J. p. 1011, §173 (Anno). (3) 13 C. J. p. 75, §110; 23 C. J. p. 109, §1917. (4) 33 C. J. p. 1002, §158 (Anno). (5) 13 C. J. p. 56, §80; p. 57, §81; p. 63, §86; 33 C. J. p. 992, §135; p. 1006, §161 (Anno). (6) 13 C. J. p. 47, §62. (7) 13 C. J. p. 61, §83, (Anno). (8) 13 C. J. p. 52, §69; p. 56, §80; p. 58, §81. (9) 13 C. J. p. 67, §§89, 90. (10) 13 C. J. pp. 46, 47, §62. (11) 13 C. J. p. 32, §42 (Anno.) (12) 13 C. J. p. 32, §42. (13) 35 C. J. p. 194, §99. (14) 13 C. J. p. 92, §140. See under (1, 2) anno. 31 L. R. A. 465; L. R. A. 1915F, 766; 28 R. C. L. p. 468. (3) 15 R. C. L. p. 1113; 3 R. C. L. Supp. p. 535; 4 R. C. L. Supp. p. 1039; 5 R. C. L. Supp. p. 868. (5) 6 R. C. L. 529. (10) anno. 8 A. L. R. 1545; 6 R. C. L. p. 516; 3 R. C. L. Supp. p. 142; 4 R. C. L. Supp. p. 422; 5 R. C. L. Supp. p. 350; 6 R. C. L. Supp. 393.